NUMBER 13-09-00109-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ADRIAN PINA CONTRERAS, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 103rd District Court 

of Cameron County, Texas.

 


MEMORANDUM OPINION


Before Justices Rodriguez, Benavides, and Vela


Memorandum Opinion by Justice Rodriguez



 Appellant Adrian Pina Contreras was convicted of murder and sentenced to
seventy-seven years in prison. Contreras appeals the judgment, asserting six issues which
we renumber and reorganize as the following four issues: (1) the State improperly withheld
impeachment evidence and the trial court erred in refusing to grant appellant's motion for
new trial on that basis; (2) the trial court erred in admitting evidence of appellant's gang
affiliation and a photograph of the victim; (3) the State made improper jury argument; and
(4) counsel's assistance was ineffective. We affirm.

I. Background

 Testimony at trial revealed that on March 20, 2004, the victim, David Garcia, was
at the beach on South Padre Island. During the early-morning hours, Garcia was stabbed
in the neck by a man wearing a Hawaiian shirt. Elizabeth Flores Zorola, (1) a medical
assistant who was at the beach when the stabbing occurred, performed CPR on Garcia
until the EMS arrived. Garcia was taken to the hospital by ambulance. According to the
autopsy report, Garcia was pronounced dead on arrival at the hospital. Norma Jean
Farley, a forensic pathologist, testified that the cause of death was a stab wound to the
neck.

 In January 2008, appellant was indicted for the murder of Garcia. The jury trial
began on November 18, 2008. Two eyewitnesses, Zorola and Adriana Flores, Zorola's
sister, testified at trial. Zorola testified that the man who stabbed Garcia was wearing a
blue Hawaiian shirt with white flowers on it. Zorola described the man as bald and
big--heavy set. He wore his shirt open, with a white muscle shirt under it. Before the
stabbing, Zorola saw the man's face when he walked in front of her and she noticed his
shirt. Flores also described the man who struck Garcia as "big, bald," and "wearing a
Hawaiian shirt with a muscle shirt under [it] with beige shorts." Flores testified that she saw
the man walking on the beach. In addition, Moises Ruiz testified that he and Garcia were
"hanging out" during Spring Break and that he saw someone "punch" Garcia. Ruiz testified
that he did not see appellant at the beach that night, but he described the person who
struck Garcia as "chubby" with "shaved hair." Ruiz also testified that the man was wearing
a shirt with Hawaiian designs. (2)

 Furthermore, Zorola and Flores testified that about a week after the incident they
were asked to look at photo lineups and had identified appellant as the person who
stabbed Garcia. Flores, who was fourteen at the time of the incident, testified that she
remembered the man's face and was not mistaken in her identification of appellant. At
trial, both women identified appellant as the person each had identified earlier from the
photo lineups.

 Lieutenant Domingo Diaz, Jr., the police officer who was with Zorola and Flores
when they identified appellant, also testified regarding the photo lineup identifications. (3) He
stated that each lineup included a picture of appellant. Lieutenant Diaz identified appellant
as the same person the witnesses had identified, explaining that appellant had lost a lot
of weight.

 Appellant's defense was that the State's prosecution was based on a mistaken
identity. Appellant denied being at South Padre Island on the morning in question and
called other witnesses who testified likewise. The jury rejected this defense, found
appellant guilty of murder, and assessed a sentence of seventy-seven years.

 Appellant timely filed a motion for new trial asserting that he was entitled to a new
trial because the State had not provided him with information regarding criminal records
of a witness and a plea agreement offered to the same witness in another case for
testifying in appellant's case; appellant asserts this information could have been used for
impeachment purposes. After considering the evidence and argument offered at the
hearing, the trial court denied the motion for new trial. This appeal ensued.II. Brady Violation In his first issue, appellant complains that his conviction should be set aside
because the State improperly withheld impeachment evidence, violating Brady v. Maryland. 
See 373 U.S. 83, 87 (1963). Specifically, appellant contends that, after trial, his counsel
discovered that Zorola had received favorable treatment from the State and, subject to her
testimony, was to have a pending aggravated assault felony charge reduced to a Class A
misdeamenor. Appellant claims that this information could have been used for
impeachment purposes but was not provided to his trial counsel by the State. (4) He further
argues that the evidence offered at the hearing on his motion for new trial showed that
Zorola was provided a deal by the District Attorney's office and that the evidence, had it
been disclosed by the State, would have been material to his defense.

A. Applicable Law and Standard of Review

 In Brady, the United States Supreme Court concluded that the suppression by the
prosecution of evidence favorable to a defendant violates due process if the evidence is
material either to guilt or punishment, without regard to the good or bad faith of the
prosecution. See Brady, 373 U.S. at 87; Harm v. State, 183 S.W.3d 403, 405 (Tex. Crim.
App. 2006) (en banc); Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). Under
Brady, a prosecutor has an affirmative duty to turn over material, exculpatory evidence. 
373 U.S. at 87. Exculpatory evidence includes impeachment evidence. Wyatt, 23 S.W.3d
at 27 (citing United States v. Bagley, 473 U.S. 667, 676 (1985)).

 To show reversible error under Brady, a defendant must prove that: (1) the State
failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the
withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a
reasonable probability that had the evidence been disclosed, the outcome of the trial would
have been different. Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002); see
Harm, 183 S.W.3d at 405; see also Lowry v. State, No. 13-03-00081-CR, 2008 Tex. App.
LEXIS 935, at *30 (Tex. App.-Corpus Christi Feb. 7, 2008, pet. ref'd) (mem. op., not
designated for publication). "The mere possibility that an item of undisclosed information
might have helped the defense, or might have affected the outcome of the trial, does not
establish 'materiality' in the constitutional sense." Hampton, 86 S.W.3d at 612 (emphasis
added) (quoting United States v. Agurs, 427 U.S. 97, 109-10 (1976)). Rather, the inquiry
is whether the failure of the State to disclose the evidence undermines the confidence in
the jury's verdict. See Lempar v. State, 191 S.W.3d 230, 241 (Tex. App.-San Antonio
2005, pet ref'd) (mem. op., designated for publication) (citing Ex parte Richardson, 70
S.W.3d 865, 870 n.22 (Tex. Crim. App. 2002)).

 Because the Brady violations were raised in a motion for new trial, we review the
trial court's determination under an abuse of discretion standard. See Webb v. State, 232
S.W.3d 109, 112 (Tex. Crim. App. 2007). "We view the evidence in the light most
favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone
of reasonable disagreement. Id. (citing Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim.
App. 2004)).

B. Discussion

 At the hearing on the motion for new trial, the attorneys for the State argued to the
trial court that they had no knowledge of any offer to secure Zorola's testimony in exchange
for a reduction of charges on an aggravated assault case pending against her. By affidavit
filed in support of the State's response to appellant's motion for new trial, the prosecutor
stated that the State "has not promised [Zorola] anything regarding the charges that are
pending against her at this time for her testimony" and that [the prosecutors] "are not
involved in the plea bargaining."

 Appellant supported his position through the testimony of attorney Angela Nix, a
practicing attorney who had been appointed in June 2006 to represent Zorola in a second-degree felony, aggravated-assault case. Nix testified that she was at the courthouse for
the re-arraignment of her client Zorola after being advised in November 2008, "that one of
[her] long-gone absconder clients [Zorola] had surfaced again," and she "needed to come
. . . to the courthouse to arraign [Zorola] and speak to the [S]tate about her." While waiting
for her client, Mike Kiesel from the District Attorney's Office informed Nix there was an offer
they wanted to extend to Zorola regarding her aggravated assault case. (5) Although Nix
testified that Zorola seemed to be aware of the offer and had accepted it, she also testified
that Zorola never told her that she had an agreement to testify and that, in exchange for
that testimony, she was going to get a deal.

 On cross-examination it was determined that Nix's conversation with Kiesel occurred
while Zorola was testifying on behalf of the State in appellant's case. According to Nix's
testimony, during that conversation Kiesel told her that Zorola's testifying was the reason
for them making this more than generous offer to reduce Zorola's charge to a Class A
assault. (6) Finally, in response to the trial court's questions, Nix indicated that she spoke
with Kiesel before she went to re-arraign her client and that while going to the re-arraignment, Nix and Kiesel observed Zorola being assaulted by "some folks interested in
the trial." Although Nix intended on "doing the plea with [Zorola] that day in county court
. . . after she got assaulted, she was rather shook [sic] and she left the courthouse with an
escort provided by the DA's office." Nix acknowledged that, except for a November 20 re-arraignment form filed with Judge Leal, nothing had been filed with the county court. Nix
also testified that she had not received any paperwork indicating a plea in her client's case
and had not been notified that it had been filed.

 Assuming without determining that the State withheld evidence and that it was
favorable to appellant, thus, satisfying Brady's first two elements, we conclude,
nonetheless, that the trial court did not abuse its discretion in denying appellant's motion
for new trial because appellant cannot show that the complained-of information is material. 
See Hampton, 86 S.W.3d at 612; see Harm, 183 S.W.3d at 405. The jury heard Zorola's
testimony on November 19, 2008. The jury had already heard Flores identify appellant as
the person who stabbed Garcia and who was wearing a Hawaiian shirt. The jury had also
heard Ruiz, who was "hanging out" with Garcia that morning, testify that he saw a "chubby
guy" "swing at David," and that the man had "shaved hair" and was wearing a shirt with
Hawaiian designs. The jury had heard Lieutenant Diaz testify that approximately one week
after the incident Zorola identified appellant from a photo lineup. That identification was
made more than four years before Zorola was asked to testify and more than four years
before she entered into an agreement, if any, with the State to testify in appellant's case
in return for favorable treatment in her 2006 aggravated assault case.

 Appellant asserts that he wanted to use this information for impeachment purposes. 
In his motion for new trial he asserted that the information would have been helpful in his
defense because it would go to Zorola's credibility and whether she was testifying to the
facts or whether she was testifying to keep herself from going to prison. However, it is
clear to this Court that the State's failure to disclose any agreement it may have had with
Zorola would not have undermined the confidence in the jury's verdict. See Lempar, 191
S.W.3d at 241 (citing Ex parte Richardson, 70 S.W.3d at 870 n.22). At best, it might
suggest that Zorola had an interest in testifying at trial. There is no evidence that
knowledge of an agreement would have offered appellant the opportunity to impeach
Zorola's testimony. See Harm, 183 S.W.3d at 408 (explaining that "impeachment evidence
is that which disputes or contradicts other evidence"). Zorola's testimony at trial was
consistent with her identification of appellant four years earlier and also with the testimony
of Flores, Ruiz, and Lieutenant Diaz. See Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986) (noting that the jury, as the trier of fact, is the exclusive judge of the credibility
of witnesses and the weight to be afforded their testimony). Therefore, while it is
conceivable that this information would possibly have helped the defense, the mere
possibility does not establish "materiality" in the constitutional sense. See Hampton, 86
S.W.3d at 612. Appellant has failed to demonstrate that the information would probably
lead to a different outcome. See id.; see also Harm, 183 S.W.3d at 405; Wyatt, 23 S.W.3d
at 27. As a result, any evidence regarding an agreement Zorola had with the State would
not be material. See Wyatt, 23 S.W.3d at 27. Thus, appellant has not satisfied the third
element of Brady. See Hampton, 86 S.W.3d at 612; Harm, 183 S.W.3d at 405. Based on
this analysis, we further conclude that the trial court did not abuse its discretion in denying
appellant's motion for new trial. See Webb, 232 S.W.3d at 112. Accordingly, we overrule
appellant's first issue.

III. Admission of Evidence

 In his second issue, appellant complains of the admission of certain evidence,
including evidence of appellant's gang affiliation and an autopsy photograph.

A. Gang Affiliation Testimony

 Appellant first asserts that the trial court erred in allowing the State to present
evidence of his gang affiliation because the evidence was inflammatory and irrelevant and
used only "to show that he was a bad and dangerous person who acted in conformity with
his bad character." See Tex. R. Evid. 404(b); Moreno v. State, 721 S.W.2d 295, 301 (Tex.
Crim. App. 1986) (en banc). Appellant further claims that, through this testimony, the
danger of unfair prejudice substantially outweighed the probative value of the evidence. 
See Tex. R. Evid. 403. The State responds that appellant has failed to preserve error on
this issue. We agree.

 Although appellant contends that the State improperly elicited testimony from
appellant and his alibi witnesses concerning appellant's alleged gang membership,
appellant does not assert that defense counsel raised such an objection to the complained-of testimony, nor have we found this to be the case. Thus, appellant presents nothing for
review. See Tex. R. App. P. 33.1(a) (providing that to preserve error for appellate review,
the complainant must make a timely, specific objection that the trial court refuses); Young
v. State, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (en banc); see also Tex. R. Evid. 103.

B. Autopsy Photograph

 Appellant also complains of the admission of State's exhibit 8, an autopsy
photograph of the victim's head. He contends that the trial court erred in admitting the
photograph because it is prejudicial, of no probative value, and the prejudice outweighs the
need for the photograph. See Tex. R. Evid. 403, 404.

 The admissibility of photographs over a challenge is within the sound discretion of
the trial court. Rojas v. State, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998). However,
when a defendant affirmatively states that he has "no objection" to the admission of the
evidence during trial, he waives the right to complain about the trial court's ruling on
appeal. Holmes v. State, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008). In this case,
appellant's counsel affirmatively responded that he had no objection when the State
tendered exhibit 8, the autopsy photograph, and the trial court received the exhibit without
objection. Therefore, appellant has not preserved this complaint.

 Having concluded that appellant failed to preserve error regarding the admission of 
gang-affiliation testimony or of the autopsy photograph, we overrule appellant's second
issue.

IV. Improper Jury Argument

 In his third issue, appellant asserts that the trial court erred in refusing to instruct the
jury to disregard the following prosecutorial jury argument:  "Is it a coincidence that Norma
Rendon came here and told you that she received information from Armando Trevino that
only the person there would have known that Bubba Pina was at the beach."  We need not
address this contention, however, because appellant objected that the argument was
based on facts not in evidence, and the trial court sustained his objection.  See Young, 137
S.W.3d at 69.  Appellant then asked for an instruction, and the trial court granted his
request.  See id.  Therefore, this assertion is misguided.

 Appellant also appears to be complaining of all prosecutorial jury arguments that
suggested appellant's gang affiliation.  However, the court of criminal appeals has
concluded that an objection pursued to an adverse ruling is required to preserve jury
argument error for appellate review. Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim.
App. 2007). In this case, when the prosecutor presented gang-related jury arguments,
appellant did not object.  Therefore, appellant has not preserved error to the extent he is
now complaining of such arguments. We overrule appellant's third issue.


V. Ineffective Assistance of counsel

 By his fourth issue, appellant asserts that his conviction should be set aside
because he received ineffective assistance of counsel at trial. He complains of the
following instances when counsel was allegedly ineffective: (1) when counsel elicited
testimony from appellant regarding his prior criminal history, including an arrest for
aggravated assault with a weapon on a rival gang member; (2) when counsel elicited
testimony from witnesses opening the door to otherwise inadmissable extraneous offense
or "bad acts" evidence; (3) when counsel asked questions of appellant and witnesses
about appellant's gang affiliation; and (4) when he failed to object to testimony or to request
a limiting instruction on gang affiliation testimony or extraneous-offense evidence. (7) 
Appellant asserts that counsel's actions destroyed his credibility and prejudiced his
defense.

 Strickland v. Washington sets forth the standard with which we review claims of
ineffective assistance of counsel. 466 U.S. 668, 688 (1984); see Stafford v. State, 813
S.W.2d 503, 506 (Tex. Crim. App. 1991) (en banc). In order to determine whether
appellant's trial counsel rendered ineffective assistance, we must first determine whether
appellant has shown counsel's representation fell below an objective standard of
reasonableness and, if so, then determine whether there is a reasonable probability that
the result would have been different but for counsel's errors. Strickland, 466 U.S. at 688,
690-94. In assessing a claim of ineffective assistance of counsel, we indulge a strong
presumption that "counsel's conduct fell within a wide range of reasonable representation." 
Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Appellant must overcome
the presumption that, under the circumstances, the challenged action might be considered
sound trial strategy. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); Stafford,
813 S.W.2d at 508-09. Furthermore, the record on direct appeal will rarely contain
sufficient information to evaluate an ineffective assistance claim. Bone v. State, 77 S.W.3d
828, 833 (Tex. Crim. App. 2002).

 In this case, the appellate record contains no evidence regarding the trial strategy
of appellant's counsel. See id. Specifically, the record developed at the hearing on the
motion for new trial contains no evidence supporting appellant's ineffective assistance of
counsel claim. Appellant's trial counsel did not testify regarding his performance at trial. 
Therefore, we conclude that the record does not rebut the presumption that trial counsel's
actions and decisions were reasonably professional and were motivated by sound trial
strategy. See Garcia, 57 S.W.3d at 440; Stafford, 813 S.W.2d at 508-09; see also Salinas,
163 S.W.3d at 740. We overrule appellant's fourth and final issue.

VI. Conclusion

 We affirm the judgment of the trial court.

 

 NELDA V. RODRIGUEZ

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).


Delivered and filed the

10th day of June, 2010.
1. Elizabeth Flores Zorola is also referred to in the record as Elizabeth Lilliana Flores.
2. The three witnesses testified that the person who struck Garcia was wearing a Hawaiian shirt. The
description of the pattern on the shirt differed somewhat. Appellant testified that he did not own a Hawaiian
shirt.
3. We note Zorola testified that she was in her apartment at the time she looked at the photo lineups
but that Lieutenant Diaz testified that he showed Zorola the photo lineups in the parking area of her residence. 
Otherwise, the testimony regarding the identifications made from the photo lineups was consistent.
4. Appellant also claims that trial counsel requested but did not receive any report from NCIC/TCIC
(national and statewide criminal information data bases) and other exculpatory evidence from the State. 
However, appellant does not develop this contention on appeal; he provides no further explanatory argument
addressing the information contained in the NCIC/TCIC report or other exculpatory evidence about which he
complains. Although appellant provides general law and one citation to the record, he merely states in a
conclusory fashion that this information, which could have been used for impeachment purposes, was not
provided by the State. In sum, appellant provides no meaningful analysis to support this claim that the State
improperly withheld this evidence which was allegedly impeachment or exculpatory evidence. Thus, this
briefing is inadequate. See Tex. R. App. P. 38.1(i) (requiring an appellant's brief to contain a clear and concise
argument for the contentions made, with appropriate citations to authorities and to the record).
5. It is undisputed that Mike Kiesel is no longer with the District Attorney's Office in Cameron County,
Texas.
6. Nix testified that, as part of the agreement, the aggravated assault would be dismissed in the district
court where Zorola would not have been eligible for probation because of a previous conviction. Nix also
testified that she had noted on her calendar that, as discussed with Kiesel, she was, and still is, expecting that
Zorola will "plead cold to the misdemeanor . . . on an assault Class A, and transfer the probation to Nebraska."
7. Appellant also contends that his counsel was ineffective because he failed to (1) adequately protect
his rights by insisting on rulings on discovery requests; (2) object to hearsay; and (3) conduct a sufficient
independent investigation of the facts of the case. He does not, however, support these assertions with clear
and concise arguments and with appropriate citations to authorities and to the record. Tex. R. App. P. 38.1(i);
Rhoades v. State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (en banc) ("It is incumbent upon counsel to
cite specific legal authority and to provide legal argument based upon that authority."). Therefore, we
conclude that these additional contentions are inadequately briefed. See Tufele v. State, 130 S.W.3d 267,
271 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd).