

# NUMBERS
## 13-13-00372-CR
## 13-13-00373-CR
## 13-13-00374-CR
## 13-13-00375-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**DAVID ALLEN RUSSELL,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 199th District Court of Collin County, Texas.

---

## MEMORANDUM OPINION ON REHEARING

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion on Rehearing by Chief Justice Valdez**

We withdraw our opinion and judgments in these cause numbers and substitute this memorandum opinion and accompanying judgments in their place. Appellant, David Allen Russell, was convicted of one count of sexual assault of a child, two counts of sexual

assault, and three counts of indecency with a child regarding the victims, M.C., M.H., H.B., and E.L. By two issues, appellant contends that he was denied due process of law by the State's failure to turn over exculpatory evidence, which tainted the four cases, and that "the State suborned perjury in failing to turn over exculpatory evidence and then elicit[ed] testimony that the exculpatory evidence directly contradicted." We affirm.

## I. BACKGROUND[1]

Appellant was a chiropractor with several patients who were young dancers from his girlfriend's dance studio. Some of appellant's patients, including some of the dancers, testified that appellant had touched their vaginas, inserted his finger in their vaginas, and touched their breasts. Appellant was tried in one proceeding for all of the causes, and all of the victims testified at this consolidated trial. The jury convicted appellant of several of the charged offenses. In appellate cause number 13-13-00372-CR, appellant was convicted of one count of sexual assault of a child, and one count of indecency with a child by contact.[2] Appellant received fifteen years for the sexual assault of a child charge and eight years for the indecency with a child by contact charge.[3] The trial court ordered the sexual assault of a child charge to run concurrently with the charges in the other causes and the indecency with a child charge to run consecutively. In appellate cause number 13-13-00373-CR, appellant was convicted of one count of sexual assault, and he

---

[1] This case is before the Court on transfer from the Fifth Court of Appeals in Dallas pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[2] In this cause, appellant was found guilty of penetrating M.C.'s female sexual organ with his finger and by touching her breasts with his hand.

[3] The jury acquitted appellant of a second indecency with a child by contact charge as to M.C.

2

received a concurrent ten-year sentence.[4]  In appellate cause number 13-13-00374-CR, appellant was convicted of one count of indecency with a child by contact, and he was sentenced to a concurrent twelve-year sentence.[5]  In appellate cause number 13-13-00375-CR, appellant was convicted of one count of sexual assault and received a concurrent ten-year sentence.[6]

Appellant filed a motion for new trial alleging that the State had withheld exculpatory and/or impeaching evidence and that the prosecutor had engaged in misconduct.  The trial court held a hearing on appellant's motion for new trial, and the motion was denied by operation of law.  This appeal followed.

## II.  STANDARD OF REVIEW

We review a trial court's denial of a motion for new trial for an abuse of discretion. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012); *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993) ("The decision on a motion for new trial rests within the sound discretion of the trial court, and in the absence of an abuse of discretion this [C]ourt would not be justified in reversing the judgment.").  A trial court has broad discretion when assessing the credibility of the witnesses and in weighing the evidence when determining whether a different result would occur upon retrial.  *Messer v. State*, 757 S.W.2d 820, 827–828 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

---

[4] In this cause, the jury found appellant guilty of sexually assaulting M.H. by penetrating her sexual organ with his finger without her consent.

[5] The jury convicted appellant of indecency with a child by touching H.B.'s genitals with his hand. The jury acquitted appellant of one count of aggravated sexual assault of H.B., a child.

[6] The jury convicted appellant of sexually assaulting E.L. by penetrating her sexual organ with his finger without her consent.  The jury acquitted appellant of two counts of indecency with a child regarding E.L.

In *Brady [v. Maryland*, 373 U.S. 83 (1963)] the United States Supreme Court concluded that the suppression by the prosecution of evidence favorable to a defendant violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. Appellant must satisfy three requirements to establish a *Brady* violation: (1) the [S]tate suppressed evidence; (2) the suppressed evidence is favorable to defendant; and (3) the suppressed evidence is material. Incorporated into the third prong, materiality, is a requirement that defendant must be prejudiced by the state's failure to disclose the favorable evidence.

The Supreme Court subsequently extended *Brady* and held that the duty to disclose such evidence is applicable even if there has been no request by defendant, and that the duty to disclose encompasses both impeachment and exculpatory evidence. This duty also requires disclosure of favorable evidence known only to the police. Consequently, prosecutors have a duty to learn of *Brady* evidence known to others acting on the state's behalf in a particular case. It is irrelevant whether suppression of the favorable evidence was done willfully or inadvertently.

*Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006) (internal citations omitted).

### III. PERTINENT FACTS

At appellant's trial, E.L. testified that appellant had committed the alleged acts of penetrating her vagina with his finger when she sought treatment from him after a car accident in October 2005. E.L. claimed that she had sought treatment from appellant after the October 2005 car accident "at least one or two times a week for at least two months." It was during this period that E.L. alleged appellant started to touch her under her pants, put his hand on her vagina under her panties, and he put his finger inside her to "adjust her." E.L. was twenty when these alleged incidents occurred. Appellant points out that E.L. stated that appellant's records regarding E.L.'s treatment, including the records from the 2005 car accident, were missing or altered and that other witnesses testified that their records had also been altered, were missing, or incomplete. E.L. testified that after reviewing her chart from appellant's practice, she was surprised that

4

her "October 2005 accident is missing." She said, "They have records from 1998 to 2006 or '7, and even treatment in August of 2005 is listed but my accident in October is not. Additionally, there on the back page for some reason, was a photo of me taped to the inside of my chart, a prom photo of me and my friend that I went to the prom with."[7] E.L.'s testimony reflects that the only time that appellant penetrated her vagina with his finger was when she sought treatment from him after the October 2005 car accident.

Appellant states in his brief that after his trial, E.L.'s civil attorney, Lance Baxter, told appellant's trial counsel that Baxter had been approached by the State to obtain documents to verify E.L.'s claim that she sought treatment from appellant in October 2005 after the car accident. According to appellant, Baxter stated that "he found his *Stowers* letter and provided that document to the State while the trial was ongoing." Specifically, Baxter recalled giving the letter to an investigator named "Bowers."

According to appellant, once Baxter relayed that information to his trial counsel, his trial counsel immediately texted, emailed, and phoned the assistant district attorney, Shannon Miller, about the letter. The State concedes that, during the trial, it received the letter but it did not provide it to appellant's trial counsel.

After appellant was convicted, the trial court held a hearing on appellant's motion for new trial to determine whether the State withheld *Brady* information, if any, by failing to disclose Baxter's letter. At the hearing, Baxter testified that "based upon his *Stower*s letter, [E.L.] was not treated by [appellant] for injuries suffered in the car accident in

---

[7] E.L. claimed that neither she nor her parents recalled giving appellant that picture.

5

2005."[8]  Baxter further testified that he would have testified for either the State or the defense at appellant's trial had appellant's defense counsel known about him.

Miller testified that she was the prosecutor in this case and that she received an email from Investigator Bowers on April 16, 2013 regarding their initial conversation to obtain Baxter's letter.  Miller stated that she received a copy of the Baxter letter on April 16, 2013 during her cross-examination of a witness.  Miller related that Investigator Bowers "whispered in her ear that the information [in the Baxter letter] did not show anything about Appellant."[9]  And, she admitted that she did not review the Baxter letter until the trial concluded and that she never disclosed the existence of the letter to appellant's trial counsel.  Bowers testified that Baxter never told him that the absence of appellant's name in the letter indicated that E.L. was not treated by appellant after the October 2005 car accident.  According to Bowers, Baxter told him to check other sources for documentation of E.L.'s treatment after her October 2005 accident.

## IV.  *BRADY* VIOLATION

By his first issue, appellant complains that the State became aware of Baxter's letter during his trial and that it contains *Brady* material.  The letter did not mention appellant; moreover, at the motion for new trial hearing, Baxter testified that he had prepared the letter in order to document E.L.'s medical bills incurred after the accident

---

[8] Appellant's attorney asked, "And did you advise [Bowers] that based upon your review of your file, that . . . —that [E.L.] did not treat with [appellant] for any car accident in 2005?"  Baxter replied, "That's what I told him, yes."

[9] It is undisputed that the letter does not mention appellant.  Although the letter is not included in the reporter's record, as appellant has pointed out in his motion for rehearing, the letter was attached to his motion for new trial and was included in the Clerk's record.  We note that at the motion for new trial hearing, the letter was referred to as "Exhibit Number 1," but it was not listed as an exhibit by the court reporter.  We have reviewed the letter, and it does not mention appellant; therefore, our analysis does not change.  After reviewing appellant's motion for rehearing and the State's response, we deny the motion for rehearing.

6

and that, because the letter did not include appellant as a medical provider that indicated E.L. had not been treated by appellant after the October 2005 accident.

Appellant argues that his *Brady* violation claim is meritorious because he showed the following: (1) the State failed to disclose evidence, regardless of the prosecutor's good or bad faith; (2) the undisclosed evidence constitutes exculpatory or impeachment evidence that is favorable to him; (3) if disclosed and used effectively, the evidence may make a difference between conviction and acquittal; and (4) the evidence is material, that is, presents a reasonable probability that, had the evidence been disclosed, the outcome of the proceedings would have been different. *See Pena v. State*, 353 S.W.3d 797, 807–09 (Tex. Crim. App. 2011).

The State conceded at the motion for new trial hearing and concedes on appeal that it failed to disclose the Baxter letter. However, in order to meet his burden appellant had to show that the letter constituted favorable evidence and that it would have made a difference in the outcome of his trial. Appellant argues that the Baxter letter, combined with Baxter's testimony that E.L. would have informed him of the treatment from appellant if it had occurred, makes the evidence exculpatory and/or impeachment evidence that is favorable to him and that had it been disclosed, if used properly and effectively, it would have made a difference between being convicted and being acquitted.

Appellant states that a theme presented by the State at trial was that some of his patients' records were missing including testimony by E.L. that her records were missing regarding the 2005 accident and that his trial counsel testified that he would have used the Baxter letter and called Baxter as a witness had the letter been disclosed by the State. Specifically, appellant's trial counsel testified he would have used the letter during cross-

examination of E.L. to show that she was not telling the truth and to support appellant's position that E.L. never received treatment from appellant after the October 2005 accident—the time period wherein she claims he committed the act that the jury found constituted sexual assault. Appellant also points out that other witnesses claimed that the records were altered or fabricated. Appellant argues that "[t]he evidence was favorable" to him because the letter "strengthens" his defense that E.L. had not been treated by appellant after the October 2005 accident.

The State responds that the letter was not favorable to appellant's defense because it did not state that E.L. did not receive any treatment from appellant after the October 2005 accident. The State argues that the letter is not impeaching because it does not dispute, disparage, deny, or contradict other evidence. The State claims that the letter merely showed that Baxter did not list the treatment from appellant as a cost in E.L.'s October 2005 car accident. In addition, the State points out that no one had informed any State agents that Baxter stated that if the accident was not listed in his letter, then that meant that E.L. did not receive treatment.

We agree with the State. Although Baxter testified at the motion for new trial hearing that he told Bowers that the letter meant that E.L. never received treatment from appellant in October 2005, Bowers contradicted Baxter's testimony by stating that during appellant's trial, Baxter did not inform him that that is what the letter meant. The trial court is the finder of fact, and when contradictory evidence is presented, the trial court must determine what evidence to believe. *Bell v. State*, 256 S.W.3d 465, 468 (Tex. App. 2008) ("At a hearing on a motion for new trial, a trial court as finder of fact is free to believe or disbelieve the testimony of any witness, even if the testimony is uncontroverted.") (citing

8

*Keeter v. State*, 74 S.W.3d 31, 38 (Tex. Crim. App. 2002); *Purchase v. State*, 84 S.W.3d 696, 700 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)). Thus, the trial court was free to believe Bower's testimony, to disregard Baxter's testimony, and to conclude that the State was not in possession of any evidence that the letter meant that E.L. had not received treatment from appellant after her October 2005 accident. *See Messer*, 757 S.W.2d at 827–28; *see also Bell*, 256 S.W.3d at 468. Thus, the record supports a finding that the State did not possess knowledge that Baxter would testify that the letter meant that E.L. had not received treatment from appellant. *See Harm*, 183 S.W.3d at 407 ("*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist."). In addition, the trial court may have concluded that Baxter did not have personal knowledge of what medical treatment E.L. had after her October 2005 accident based on his testimony that he relied on her to tell him about all of the medical providers she saw and his acknowledgment that she could have failed to tell him about appellant's treatment.[10] *See Pena*, 353 S.W.3d at 814 ("The State does not have a duty to disclose favorable, material evidence if it would be inadmissible in court.").

Moreover, the letter did not itself establish that E.L. did not receive treatment from appellant. And, Baxter testified that he only included those medical charges that E.L. had told him about. Thus, the letter by itself is not exculpatory. *See Harm*, 183 S.W.3d at 408 ("Exculpatory evidence may justify, excuse, or clear the defendant from fault, while impeachment evidence is that which disputes or contradicts other evidence."). The letter merely established that E.L. sought treatment from certain medical providers after her

---

[10] Appellant did not call E.L. to testify at his motion for new trial hearing.

accident and failed to mention appellant. Because the letter does not mention appellant, it does not dispute or contradict E.L.'s testimony that she sought treatment from appellant after her October 2005 car accident.[11] And, Baxter acknowledged that there were other possible reasons that appellant was not listed in the letter. It was undisputed that E.L. had been treated by appellant on other occasions in 2005 and that he had treated her after she had been involved in another car accident.[12] Therefore, the trial court may have reasonably inferred that E.L. may have been mistaken about the date, that E.L. had not informed Baxter about the treatment, or that E.L. had been treated by appellant for an injury unrelated to the October 2005 car accident and was confused.[13] Thus, we conclude that appellant did not show that the letter was favorable to him. Therefore, the trial court did not abuse its discretion by denying appellant's motion for new trial. We overrule appellant's first issue.[14]

---

[11] As previously mentioned, the trial court could have determined that when the State acquired the letter, Baxter had not informed the State that the letter meant E.L. had not been treated by appellant after the October 2005 accident.

[12] It is also undisputed that E.L. sought treatment from appellant starting at the age of approximately twelve and ending at approximately the age of twenty-two or twenty-three. The years were 1998 until 2008, "on and off." During cross-examination of E.L., appellant's trial counsel said that E.L. had been treated by appellant twenty-six times after she began working for appellant. Appellant's trial counsel stated, "While you [E.L.] were employed there, you saw him nine times in June of '02, one time in July, and you didn't see him any in August. So, you know, another 10 to 12 times while you are employed. So you are talking 40—you know, 35, 40 times that you were in his office or that you were adjusted or seen by him?" E.L. began working for appellant sometime in May 2002, and she turned seventeen on June 7, 2002.

[13] At appellant's trial, E.L. testified that she "experience[d] some short-term memory loss after the car accident because of the extensive damage to the car, my injuries, and the amount of medication that I was on, consequently."

[14] By a sub-issue to his first issue, appellant contends that the *Brady* violation of failing to disclose the letter affects the other cases against him. Appellant argues that because the State consolidated the four cases against him, they were intrinsically intertwined, thus causing him harm in all the cases. Appellant claims that the State's theory that records were missing due to appellant's tampering was bolstered by E.L.'s testimony, and that if the jury had heard about the letter in conjunction with Baxter's testimony, he could have rebutted that theory. However, because we have concluded that the trial court did not abuse its discretion in concluding that no *Brady* violation occurred, we need not address this issue as it is not dispositive. *See* TEX. R. APP. P. 47.4.

10

## V.    PROSECUTORIAL MISCONDUCT

By his second issue, appellant contends that the prosecutor committed misconduct by offering E.L.'s perjured testimony because the prosecutor was aware that E.L. had not been treated by appellant after the October 2005 car accident. Appellant relies on Baxter's statement that the letter meant that E.L. had not received treatment from appellant after her October 2005 car accident. However, because the trial court may have believed Bower's testimony that he was not aware of Baxter's statement when the prosecutor received the letter, we cannot conclude that the trial court abused its discretion by denying appellant's motion for new trial on that basis. We overrule appellant's second issue.

## VI.    CONCLUSION

We affirm the trial court's judgments.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
9th day of April, 2015.