**Affirmed; Opinion Filed November 17, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-01437-CR

**RYAN SCOTT PRENDERGAST, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-80303-2014**

# MEMORANDUM OPINION

Before Justices Francis, Stoddart, and Whitehill
Opinion by Justice Stoddart

A jury found Ryan Scott Prendergast guilty of sexual assault and sentenced him to ten years' confinement. On the jury's recommendation, the trial court suspended imposition of the sentence and placed appellant on community supervision for ten years. In seven issues, appellant argues the evidence is insufficient to support the verdict, the trial court erred by allowing impermissible testimony, and the State failed to timely disclose information. We affirm the trial court's judgment.

As appellant states in his brief, it is uncontested he had sex with the complaining witness, T.T., in the early morning of October 17, 2013. The issue is whether she consented.

T.T. and her friend Esther drank vodka at Esther's apartment the night of October 16, 2013. T.T. took a muscle relaxant earlier in the day and, after a few hours of drinking, fell asleep

on the couch in Esther's living room. Additional people, including appellant, went to Esther's apartment later in the evening. The group drank, smoked marijuana, watched television, and had a party in the living room. Witnesses testified two men wrestled one another while others yelled at each other. Despite the commotion, T.T. did not awaken or move from the couch.

T.T. testified she woke up during the night, saw a kitchen light on, realized several people were in the apartment, and then went back to sleep. The next thing she remembered was being awakened by someone. The person, later identified as appellant, was standing next to the couch and T.T. believed his pants were around his ankles. He used one of his hands to control her hands, which he wrapped around his erect penis before she awakened. T.T. testified: "He was having me touch his genitals, forcing me to - - every time I would say no and argue, he would answer back like with an argument, or trying to convince me, but he wasn't letting go at all."

When she woke up, T.T. was still wearing the shirt and underwear she had on when she fell asleep, but her shorts were now down around her ankles. T.T. testified:

> I continue to argue with him. I say, no, no, no, and then I told him I had a boyfriend, in hopes that that would make him stop. But he kept answering back to every no with argument, like he didn't know my name, so he just kept calling me, Baby. He just said - - kept, "Come on, Baby, come on, Baby." . . . I was trying to push him away, push him away, but he had, like, a grip on my hand, and at the point I kind of fell onto the floor, and he was still kind of like forcing me to touch him, trying to stick his hand or his fingers inside of me.

T.T. testified appellant penetrated her vagina with his fingers and then with his penis. She stated she felt "the tip go in." She did not recall performing oral sex on appellant. The following exchange occurred during T.T.'s testimony:

> Q. Now, is there anything that you could think of that you could have done that would have given him the signal, hey, this is okay?
> A. No. . . . the first words he heard out of my mouth were me telling him no.
> Q. And I know this is assumed, based on what you testified to, but did you ever consent to him penetrating your vagina with his fingers?
> A. No, sir.

Q. Did you ever consent to him penetrating your vagina with his penis?
A. No, sir.

T.T. testified: "I felt disgusted that somebody wouldn't take no for an answer, even though I was repeatedly practically begging them to stop and they wouldn't."

T.T. escaped from appellant and went into a bathroom. After approximately 25 minutes, T.T. went into Esther's roommate's bedroom, wrapped herself in a blanket, and fell asleep. When T.T. awoke, she told Esther that someone tried to have sex with her the previous night "and they wouldn't take no for an answer, and they weren't stopping." She did not know who the person was. Esther used Facebook to find a picture of appellant and T.T. immediately recognized him. Esther testified that when she showed appellant's picture to T.T., her "face just got cold." Esther called 911.

The Allen Police Department arrested and interviewed appellant. He initially denied all allegations, but, as the interview progressed, appellant admitted having sex with T.T. He maintained it was consensual. However, Detective Leo Shkolnikov testified that appellant told him that T.T. "never really said yes." Appellant also told Shkolnikov that T.T. performed oral sex on him and they briefly had intercourse. Shkolnikov testified: "He clearly indicated to me that she did not give him consent, but she just did it [oral sex]." Defense counsel played a portion of the video from appellant's police interview to the jury to show appellant believed the encounter was consensual.

T.T. refused to return to Esther's apartment after the events of October 17. Esther testified: "She moved to San Antonio. She didn't want to be in Allen. She wouldn't talk to me. She kind of went off the deep end a little bit."

In his first two issues, appellant argues the evidence is insufficient under the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) and *Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007). We review the sufficiency of the evidence in the light most favorable to the verdict

–3–

and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 319). The factfinder has the duty to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* (citing *Jackson*, 443 U.S. at 319). As a result, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id*. (citing *Hooper*, 214 S.W.3d at 16-17). When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id*. (citing *Jackson*, 443 U.S. at 326).

A person commits sexual assault if the person intentionally or knowingly causes the penetration of another person's sexual organ by any means without that person's consent. Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 22.011(a)(1)(A).

Appellant does not deny sexual activity occurred between T.T. and himself on the night in question but maintains it was consensual. T.T. testified she woke up and appellant was forcing her to place her hands around his penis. She said "no" to him multiple times, but he would respond "Come on, Baby, come on, Baby." When asked whether there was anything that would have given appellant the idea that she was consenting, T.T. clearly stated: "No. . . . the first words he heard out of my mouth were me telling him no." She stated she did not consent to him penetrating her vagina with his fingers or penis.

Considering all of the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the elements of the offense, including lack of consent, beyond a reasonable doubt. We overrule appellant's first and second issues.

In this third, fourth, and fifth issues, appellant argues the trial court invaded the province of the jury by allowing impermissible testimony relating to the issue of credibility. Appellant specifically challenges questions the State posed to Detective Shkolnikov:

> Q. Based on your review of the evidence in this case and your interview with the defendant, do you feel like - -
> [Defense counsel]: Objection. He hasn't been established as an expert to give an opinion.
> The court: Objection is overruled at this point. Go ahead, please.
> Q. Did you feel like [T.T.] consented by her actions?
> The court: Objection sustained. Next question.
> Q. You ended up filing a case against the defendant for sexual assault?
> A. Yes.
> Q. Is that because you believe, based on the evidence, you had - -
> [Defense counsel]: Objection. Asking for the same opinion.
> The Court: Okay. Please finish your question. Wait until the question is finished, because I can't rule on it until I hear the entire question. Please ask your question.
> Q. Is that because you believe that he had committed the act of sexual assault?
> The Court: The objection is overruled to that question.
> Q. Is that because you believe he committed the act of sexual assault?
> A. Without a doubt.
> Q. And in order to commit that act, it has to be penetration with some kind of object, without the other person's consent. Would you agree with that?
> A. Yes.

Although appellant asserts in his third and fourth issues that this questioning violated his rights to due process and trial by jury under the United States Constitution, Texas Constitution, and Texas Code of Criminal Procedure, he provides no legal analysis of those provisions. In that regard, the arguments are not adequately briefed. *See* TEX. R. APP. P. 38.1(i). Further, his arguments do not comport with the objection made at trial, which was that the witness had not been established as an expert to give an opinion. Appellant did not assert at trial that the questions violated his constitutional rights or the code of criminal procedure. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (point of error on appeal must comport with the objection made at trial.). We overrule appellant's third and fourth issues.

Appellant argues in his fifth issue that the above-quoted questioning of Shkolnikov impermissibly allowed lay opinion testimony in violation of rule 701. Assuming without deciding that the trial court abused its discretion by overruling the objection and allowing Shkolnikov's testimony, we conclude appellant was not harmed. A violation of evidentiary rules resulting in the erroneous admission of evidence is nonconstitutional error subject to a harm analysis under rule 44.2(b). *See* TEX. R. APP. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Any nonconstitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble*, 330 S.W.3d at 280. A criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance the error did not influence the fact-finder, or had but a slight effect on its verdict. *Id*.

As appellant conceded, the issue for the jury was whether T.T. consented to having sex with him. Numerous witnesses testified that T.T. passed out on the couch on the night in question as a result of alcohol and medication and did not awaken despite loud noises caused by people talking, yelling, drinking, and wrestling nearby. T.T. testified she did awaken, however, when appellant put her hands around his penis. T.T. told appellant "no" multiple times and stated she did not consent to him penetrating her vagina with his fingers or penis. After examining the record as a whole, we have fair assurance that error, if any, did not influence the jury and it must be disregarded. We overrule appellant's fifth issue.

In his sixth and seventh issues, appellant argues the State failed to timely disclose information within its control and that impeded the defense's investigation and denied his right to due process and due course of law under the United States Constitution and Texas Constitution. Appellant argues the State failed to comply with its obligations under *Brady v.*

*Maryland*, 373 U.S. 83 (1963). The record shows that the night before trial, the prosecutor spoke with T.T. and learned T.T. attempted suicide by overdosing on heroin nine months after the sexual assault occurred. T.T. was admitted to a hospital, but did not receive psychiatric care. The prosecutor provided the information to defense counsel the following day, before jury selection began. Defense counsel raised the issue with the trial court, stating the overdose likely would have resulted in medical records that could contain exculpatory statements beneficial to her client. The trial court conducted an in camera review of the records and found no exculpatory evidence. No further objections or requests were made.

"A *Brady* violation occurs when the state suppresses, willfully or inadvertently, evidence favorable to appellant." *Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006). It is axiomatic that there can be no *Brady* violation without the suppression of favorable evidence. *Id*; *see also Wilkins v. State*, No. 05-14-01365-CR, 2015 WL 4628214, at *9 (Tex. App.—Dallas Aug. 4, 2015, pet. ref'd) (mem. op., not designated for publication). *Brady* does not require the State to conduct independent investigations to seek out *Brady* material on behalf of a defendant. *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011); *Harm*, 183 S.W.3d at 407. The record here shows that the State learned about T.T.'s attempted suicide the night before trial and disclosed the information to defense counsel the following day before voir dire began. There is no indication in this record that the State suppressed or failed to disclose any evidence. Therefore, there was no *Brady* violation. We overrule appellant's fifth and sixth issues.

We affirm the trial court's judgment.

/Craig Stoddart/
_____
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
161437F.U05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RYAN SCOTT PRENDERGAST, Appellant

No. 05-16-01437-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-80303-2014.
Opinion delivered by Justice Stoddart.
Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of November, 2017.