Tracy HARM, Appellant,

v.

The STATE of Texas.

No. PD–1270–04.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 25, 2006.

Stephen C. Taylor, Humble, for Appellant.

Andria Bender, Asst. District Attorney, Anderson, Matthew Paul, State's Attorney, Austin, for State.

## *OPINION*

JOHNSON, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

A Grimes County grand jury indicted appellant for the second-degree offense of indecency with a child pursuant to TEX. PENAL CODE § 21.11. The state presented evidence at the guilt phase of trial that, during the year 2000, appellant and her husband had forced the complainant, A.N., to watch R-rated or pornographic movies with them, after which appellant and her husband engaged in sexual contact with A.N., who was in the second grade at the time of these incidents. A.N. was staying with appellant and her husband while A.N.'s mother recuperated from surgery. A jury convicted appellant of indecency with a child and sentenced her to 12 years' confinement in the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ–CID).

Appellant appealed, asserting that the trial court erred in denying her motion for a new trial, which was based on the ground that the state had failed to disclose evidence favorable to her, as is required by

*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Harm v. State,* 2004 WL 1555128, 2004 Tex.App. LEXIS 6156, No. 14–03–00791–CR (Tex. App–Houston [14th Dist.], delivered July 13, 2004, unpublished). Specifically, appellant asserted that the state failed to disclose Child Protective Services (CPS) records that allegedly indicated that, in the past, A.N. had made unfounded allegations of sexual abuse and had engaged in inappropriate sexual behavior.

The court of appeals, relying on *Banks v. Dretke*[1] and *Strickler v. Greene*,[2] found that no evidence existed to show: (1) the state had, or was aware of, the CPS records in question before they were provided directly to appellant's counsel by CPS after trial; or (2) that "the CPS caseworker [who testified] or his office investigated, or was in any other way involved in, these allegations concerning appellant." The court of appeals found, on the contrary, that the CPS caseworker told both the state and appellant before trial that no such records existed. The court of appeals also concluded that appellant had failed to demonstrate that anyone acting on the state's behalf either willfully or inadvertently suppressed the records. Thus, the trial court had not abused its discretion in denying appellant's motion for a new trial. Appellant then petitioned for discretionary review, reasserting in her sole ground for review[3] that, because the state failed to disclose *Brady* material, the court of appeals erred in affirming the trial court's

1. 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004).

2. 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

3. "Whether the trial court and the court of appeals abused their discretion in erroneously denying appellant's motion for new trial. The

prosecutor and CPS worker failed in their affirmative duty to disclose evidence favorable to the accused and by that evidence being material, there is a reasonable probability had the evidence been disclosed when subpoenaed, the result of the proceedings may have been different. The failure to disclose said evidence results in a violation of the XIV Amendment."

denial of her motion for a new trial. We affirm the judgment of the court of appeals.

■■■ In *Brady*, the United States Supreme Court concluded that the suppression by the prosecution of evidence favorable to a defendant violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App.2000). Appellant must satisfy three requirements to establish a *Brady* violation: (1) the state suppressed evidence; (2) the suppressed evidence is favorable to defendant; and (3) the suppressed evidence is material. *Little v. State*, 991 S.W.2d 864, 866 (Tex.Crim.App.1999); *Thomas v. State*, 841 S.W.2d 399, 402–03 (Tex.Crim.App.1992)(citing *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972)). Incorporated into the third prong, materiality, is a requirement that defendant must be prejudiced by the state's failure to disclose the favorable evidence. *Banks*, 540 U.S. at 691, 124 S.Ct. 1256.

■■■ The Supreme Court subsequently extended *Brady* and held that the duty to disclose such evidence is applicable even if there has been no request by defendant,[4] and that the duty to disclose encompasses both impeachment and exculpatory evidence.[5] This duty also requires disclosure of favorable evidence known only to the police. Consequently, prosecutors have a duty to learn of *Brady* evidence known to others acting on the state's behalf in a particular case. *Kyles v. Whitley*, 514 U.S. 419, 437–38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). It is irrelevant whether suppression of the favorable evi-

dence was done willfully or inadvertently. *Strickler*, 527 U.S. at 281–82, 119 S.Ct. 1936.

In the instant case, the trial-court record indicates that appellant issued to a CPS caseworker, Brian Pinero, a subpoena *duces tecum* that ordered him to furnish to her all CPS records relating to A.N. and her family, as well as records involving: 1) a previous CPS investigation begun after appellant's daughter complained of abuse; and 2) records of a second unrelated victim who allegedly had been abused by appellant and her husband. Immediately before the jury panel was sworn in, Pinero indicated in open court that the only records maintained by CPS involved the second unrelated victim and that the CPS office did not have any records pertaining to A.N. or her family. The following afternoon, after the trial had ended, Pinero faxed to appellant's counsel twenty-two pages of documents from CPS files that pertained to A.N. and her family.

The state contends that it neither possessed nor was aware of the CPS records sent to appellant's counsel after the trial. The state also asserts that it was not aware of the existence of the records until appellant's counsel telephoned after the trial and that the state did not possess the records until appellant's counsel filed a motion for a new trial and attached the documents to the motion.

### Analysis

■■■ A *Brady* violation occurs when the state suppresses, willfully or inadvertently, evidence favorable to appellant. There can be no *Brady* violation without suppression of favorable evidence. While appellant correctly points out that the state is prohibited from suppressing evi-

---

4. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

5. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

dence and secreting witnesses capable of establishing her innocence,[6] "*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist." *Hafdahl v. State,* 805 S.W.2d 396, 399 (Tex.Crim.App.1990)(citing *Thompson v. State,* 612 S.W.2d 925, 928 (Tex.Crim.App.1981)). The state's duty to reveal *Brady* material to the defense attaches when the information comes into the state's possession, whether or not the defense requested the information. *Thomas,* 841 S.W.2d at 407. However, the state is not required to seek out exculpatory evidence independently on appellant's behalf,[7] or furnish appellant with exculpatory or mitigating evidence that is fully accessible to appellant from other sources. *Jackson v. State,* 552 S.W.2d 798, 804 (Tex. Crim.App.1976).

■ The District Attorney's Office in Grimes County maintained an open-file policy, which generally satisfies the prosecution's duty to disclose exculpatory evidence. "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial...." *Bagley* at 675, 105 S.Ct. 3375 (footnote omitted). Although appellant's counsel reviewed the state's files on at least two separate occasions, according to the trial-court record, the records in question were not contained in those files. In this case, it appears that appellant came into posses-sion of the CPS records before the state did.

While the trial-court record seemingly indicates that the state neither willfully nor inadvertently suppressed evidence favorable to appellant, appellant urges this Court, in the alternative, to find that CPS acted as an agent of the state, thus, imputing knowledge of the records to the prosecution. *Kyles,* 514 U.S. at 437, 115 S.Ct. 1555.

Our law recognizes that different types of state employees serve different roles. CPS is charged with protecting the welfare and safety of children in the community.[8] This duty may entail the investigation of child-abuse claims, but that alone does not automatically transform CPS case workers into law-enforcement officers or state agents. *Cates v. State,* 776 S.W.2d 170, 171–72 (Tex.Crim.App.1989). While we have held that CPS case workers may be law enforcement officers[9] or state agents[10] in some circumstances, an examination of the entire record is required to determine whether a CPS employee was a state agent in a given situation. *Id.* at 172.

The state relies on our opinion in *Wilkerson v. State*[11] to conclude that CPS was not acting as a state agent in this case. *Wilkerson* is distinguishable from the current case in that it examined the narrow issue of whether CPS was a state agent when conducting a custodial interrogation and the extent to which *Miranda* warnings were required in such situations. *Id.* Here, the tardily produced reports were

---

6. *See* Tex.Code Crim. Proc. art. 2.01.

7. *Bagley,* 473 U.S. at 675, 105 S.Ct. 3375.

8. *See* Tex. Fam.Code § 264.002(a) (stating that the Department of Protective Regulatory Services–CPS shall "(1) promote the enforcement of all laws for the protection of abused and neglected children; and (2) take initiative in all matters involving the interests of children where adequate provision has not already been made").

9. *Cates,* 776 S.W.2d at 172–74.

10. *Id.*

11. 173 S.W.3d 521 (Tex.Crim.App.2005).

created in the course of an non-criminal investigation that was unrelated to appellant, but within the duties of CPS to protect the welfare and safety of the children of Texas. In addition, the CPS reports significantly predate the allegations against appellant, thus CPS could not have been working with the prosecution or at its behest.

■ Even if we were to assume, as appellant suggests, that CPS acted in a law-enforcement capacity or as a state agent and that it willfully or inadvertently concealed the records, appellant's claims still must fail because she is unable to satisfy the remaining requirements necessary to establish a *Brady* violation. A careful review of the tardy CPS records indicates that they are neither favorable nor material to appellant's case.

■ Favorable evidence is any evidence that, if disclosed and used effectively, may make a difference between conviction and acquittal and includes both exculpatory and impeachment evidence. *Thomas,* 841 S.W.2d at 404 (citing *Bagley,* 473 U.S. at 676, 105 S.Ct. 3375). Exculpatory evidence may justify, excuse, or clear the defendant from fault, while impeachment evidence is that which disputes or contradicts other evidence. *Id.* at 404. The CPS records that pertain to A.N. and her family, and which CPS provided to appellant only after her trial, stem from incidents that were alleged to have occurred in 1996 and 1998, well before appellant allegedly committed this offense. The records are unrelated to the investigation of appellant in this case and do not mention her or her husband as possible perpetrators of sexual abuse against A.N. On the contrary, A.N.'s

mother is listed as the alleged perpetrator, even though neither A.N. nor her sisters made outcry statements. Appellant cites portions of these CPS records and argues that those portions indicate that A.N. made unsubstantiated claims of past sexual abuse and that she had venereal disease. Appellant then infers from these records that A.N. is untruthful, that she engaged in inappropriate sexual behavior, and that this information is not only favorable to appellant, but also sufficient to result in appellant's acquittal had it been presented at trial.

Appellant's reliance on A.N.'s prior accusation of abuse against her sister as impeachment evidence is misplaced. The CPS file showed a third-hand hearsay report that an unidentified person had inserted an object into A.N.'s vagina. A subsequent medical examination, however, revealed no signs of sexual abuse, and A.N. admitted that she had fabricated the allegations. Such testimony is inadmissible multiple hearsay under TEX. EVID. R. 802 and does nothing to exculpate appellant. The impeachment value of such a statement is also limited because it does not fall within the well-delineated categories of impeachment evidence.[12] Moreover, the trial-court record shows that appellant did not call any witnesses to establish A.N.'s reputation for truthfulness. Appellant's reliance on complainant's alleged infection with venereal disease is also misplaced. A thorough examination of the records indicates that it was A.N.'s older sister, A.W., not A.N., who was suspected of having venereal disease. The records associated with the 1998 CPS investigation name A.N.'s sisters, not A.N., as possible sexual-abuse victims. A.N.'s sisters told CPS that they were abused

---

12. *See* TEX. EVID. R. 608 (evidence of character and conduct of a witness) and TEX. EVID. R. 609 (impeachment by conviction of a crime).

at school. CPS interviewed A.N. during this time, but she, unlike her sisters, indicated that she had not been sexually abused. Appellant also asserts that the CPS records demonstrate that A.N. acted out sexually with her sisters.[13] This evidence, however, is neither exculpatory nor useful for impeachment purposes and indicates only that A.N. may have observed inappropriate behavior or may have been previously abused. Thus, appellant fails to show that the CPS records are favorable to her defense.

■■■■■ Appellant also fails to show that the records are material. Evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Ex parte Kimes,* 872 S.W.2d 700, 702 (Tex.Crim.App.1993)(quoting *Bagley,* 473 U.S. at 676, 105 S.Ct. 3375). A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.* Materiality is determined by examining the alleged error in the context of the entire record and overall strength of the state's case. *Thomas,* 841 S.W.2d at 404–05 (citing *Agurs,* 427 U.S. at 113, 96 S.Ct. 2392). The state's case in this instance rested in large part on the testimony of A.N., but both A.N.'s mother and Deputy Christine Larner of the Grimes County Sheriff's Department's sexual-offenses investigation unit gave testimony that corroborated A.N.'s version of events.

After examining the entire trial-court record, we conclude that the court of appeals did not abuse its discretion in denying appellant's motion for a new trial. The information contained in the tardy CPS records was not favorable to appellant, nor was there any evidence to suggest that the

result of the proceedings against appellant would have been different if the CPS records had been disclosed to appellant prior to trial.

We affirm the judgment of the court of appeals.

KELLER, P.J., concurred in the result.

---

13. The file also contained an allegation that A.N. had inserted an object into her younger sister's vagina.