**Affirmed and Memorandum Opinion filed October 31, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00616-CR

---

### DENEISHIA Y. WASHINGTON, Appellant,

### V.

### THE STATE OF TEXAS, Appellee.

---

### On Appeal from the County Court at Law No. 1
### Fort Bend County
### Trial Court Cause No. 10-CCR-151432

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Deneishia Y. Washington guilty of criminal trespass and the trial judge assessed punishment at 180 days in jail, probated for 12 months. In a single issue, Washington challenges her conviction on the grounds that the State violated its duty of disclosure under *Brady v. Maryland*, 373 U.S. 82 (1963), depriving her of her right to due course of law under the Fourteenth Amendment to the United States Constitution and article I, section 19, of the Texas Constitution. We affirm.

## I

Preston Ousley, a Stafford Police Department detective, works a second job as a security officer at the Camden at Sugar Grove apartments. On July 29, 2010, while Ousley was patrolling the property, he encountered a man and a woman engaged in a loud argument. The man was a resident of the apartment complex, but the woman, later identified as Washington, was not. When Ousley asked for identification, Washington incorrectly identified herself as Brittney Johnson. Ousley asked Washington to leave the property because the resident stated that she was not his guest and he did not want her to remain on the property. Ousley further explained to Washington that she needed to leave immediately and that she could not return. Later that day, Ousley sent an email to the apartment property manager reporting the encounter with Washington. Ousley discovered Washington on the apartment complex property again on August 9, 2013. On that date, Ousley observed Washington creating a disturbance on the property and reported her to the Stafford Police Department as a trespasser.

An on-duty Stafford police officer was dispatched to the complex. When he arrived, he found Washington hiding behind a vehicle in the parking lot. He arrested her for criminal trespass.

On cross-examination, Ousley admitted that when speaking with the arresting officer on August 9, he gave the wrong date of the initial warning as August 4, 2013, not July 29, 2013. Ousley testified that he provided a copy of his email to the property manager, which was sent on the day of the initial warning, to the State. Washington objected that the email was *Brady* material and had been improperly withheld. The court ruled that the email was not subject to disclosure under *Brady*, and informed Washington's attorney that he could ask Ousley about the contents of the email. Washington asked Ousley whether he had a copy of the

2

email with him in court and to whom he sent the email. Ousley responded that he did not have a copy with him and he sent the email to Louise Crawford, the apartment's property manager. Ousley then testified that he instructed Washington to leave the property and that if she did not leave she "could and would be arrested for trespassing."

Following the testimony of the arresting officer, Washington's attorney presented a bill of exception. In response, the State's attorney read the contents of the email into the record. The email is dated July 30, 2013, and provides, "At 4:45 a.m. I broke up a verbal domestic dispute Larocca V. Dalcoe, Apartment 827 and his ex-girlfriend Brittney C. Johnson, nonresident. They were in a parking lot in front of Building A arguing." Washington argued that the email was not disclosed until trial and that disclosure "could have helped the defense in preparation of their case."

II

In a single issue Washington argues that the State's non-disclosure of "material impeachment evidence," in violation of *Brady v. Maryland*, deprived her of her due-process rights under the United States and Texas constitutions. Specifically, Washington complains that the State did not disclose a hard copy of the email Ousley sent to the property manager.

Suppression by the prosecution of evidence favorable to a defendant violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. at 87; *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). An appellant must satisfy three requirements to establish a *Brady* violation: (1) the State suppressed evidence, (2) the suppressed evidence is favorable to the appellant, and (3) the evidence is material. *Harm*, 183 S.W.3d at 406. We analyze an alleged *Brady*

violation "in light of all the other evidence adduced at trial." *Hampton v. State*, 86 S.W.3d 603, 612–13 (Tex. Crim. App. 2002).

On cross-examination, Washington asked Ousley if he had given a copy of the email to the State. Ousley responded that he had given it to the State, at which time Washington complained that the email was *Brady* material that had not been disclosed. The prosecutor, defense counsel, and the court then engaged in a discussion about whether the email was exculpatory and whether the State was required to disclose it. At the conclusion of this discussion, the following occurred:

> MR. WRIGHT [Defense counsel]: But it can clearly solve this date discrepancy, and they didn't disclose it.
>
> THE COURT: I don't think there's a problem with disclosure. I'm going to ask you to please proceed; and as far as the importance of that document, you can ask him what it said.
>
> MR. TORRES [Defense counsel]: Okay.
>
> THE COURT: But as far as throwing up a big stink about not having it in the record and it was turned over, I don't see that as an issue so you can go ahead and do it.
>
> MR. WRIGHT: On a break, can we read a bill of exception into the record for appeals purposes?
>
> THE COURT: Sure.
>
> MR. WRIGHT: Okay. Thank you, Judge.

Washington contends the email was favorable to her (1) because the date on which it was sent contradicted the first date on which Ousley reported he had given Washington an initial warning, and (2) the email fails to specify that Ousley warned Washington not to return.

Favorable evidence is any evidence that, if disclosed and used effectively, may make a difference between conviction and acquittal and includes both

exculpatory and impeachment evidence. *Harm*, 183 S.W.3d at 408. Impeachment evidence is evidence that disputes, disparages, denies, or contradicts other evidence. *Pena v. State*, 353 S.W.3d 797, 812 (Tex. Crim. App. 2011).

To obtain Washington's conviction for criminal trespass, the State was required to prove that appellant entered or remained on the property and (1) had notice that the entry was forbidden or (2) received notice to depart, but failed to do so. Tex. Penal Code. § 30.05.

Washington first argues that the date listed on the email would aid in impeachment of Ousley because he mistakenly told the Stafford police officer that he initially warned Washington on August 4, 2013, not July 29, 2013. But Washington did not need the email to question Ousley on the mistaken date; Ousley admitted his mistake.

Washington further argues that "there is no specific mention, discussion, or description of a verbal trespassing warning having been issued to the Appellant in Ousley's email. This, despite Ousley's testimony that his email described what happened during his first encounter with the Appellant." To the extent the absence of a specific mention of a verbal trespassing warning contradicts Ousley's testimony that he gave a verbal warning, the email is evidence favorable to appellant.

To succeed in her *Brady* claim, Washington must also show there is a reasonable probability that, "in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure." *Hampton v. State*, 86 S.W.3d at 612. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10; *see Pena*, 353

5

S.W.3d at 812.

On direct examination, Ousley testified that he explained to Washington that she needed to leave the property, that she could not return, and that she would be arrested for trespassing if she returned. Washington told Ousley that the resident she had been arguing with owed her money and that she was possibly the victim of a criminal act. Ousley gave Washington a Stafford Police Department business card with his name and phone number and told her if she needed help in addressing a potential criminal matter, she should contact him at the police department, but she was still required to leave the property. Ousley testified that when he explained to Washington that she would be arrested if she returned to the property, she replied, "okay." Ousley watched Washington walk to her car and drive off the property.

On cross-examination, Ousley testified that on the date of the initial warning he sent an email to the property manager. Ousley further testified that he told Washington that she had to leave the property, she could not return even if a resident invited her to return, and if she returned she would be arrested for trespassing. Ousley testified that he could not repeat the entire conversation he had with Washington, but "when it came to the warning of trespassing, it's always the same. So, yeah, I can remember that part for sure." Washington questioned Ousley as to why he did not write the warning on the back of his business card, but Ousley had no response.

On re-direct, Ousley explained that whenever he is on duty at the apartment complex, he makes an incident report in the form of an email to the property manager "describing any incidents I had on a particular night or when I would patrol the property or any incidents that I responded to where I was called or observed." During closing argument, Washington emphasized the missing email

6

by pointing out that the State failed to admit the email into evidence:

> Let's talk about the E-mail that Detective Ousley referenced. Where is it? Where is it? Where's the paper trail for the date? Wasn't here. State didn't give it to you, it wasn't put into evidence. Where's that paper trail? That would have solved a lot of your questions, a lot of my questions; but they didn't bring that today. That's doubt in my book.

Washington argues that the email was material for the impeachment of Ousley. At the time Washington cross-examined Ousley she knew of the email's existence and questioned him about sending the email and to whom he sent it. Washington did not question Ousley on the content of the email, which the trial court specifically permitted. Rather, Washington emphasized the fact that the State failed to introduce the email into evidence to bolster her argument. Washington vigorously cross-examined Ousley and attempted to impeach his credibility during cross-examination.

* * *

After examining the entire trial court record, we cannot conclude that the State's disclosure of a hard copy of the email would probably have changed the trial's outcome. We overrule Washington's sole issue and affirm the judgment of the trial court.

/s/ Tracy Christopher
Justice

Panel consists of Justices Christopher, Donovan, and Brown.

Do Not Publish — TEX. R. APP. P. 47.2(b).

7