# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 27, 2018

157388 & (141)

Stephen J. Markman,
Chief Justice

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
　　　　Plaintiff-Appellant/
　　　　Cross-Appellee,

v

SC: 157388
COA: 327799
Macomb CC: 2014-000167-FC

JOHN BUTSINAS,
　　　　Defendant-Appellee/
　　　　Cross-Appellant.

_____/

　　　　On order of the Court, the application for leave to appeal the January 23, 2018 judgment of the Court of Appeals, and the application for leave to appeal as cross-appellant are considered, and they are DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

　　　　MARKMAN, C.J. (*dissenting*).

　　　　I respectfully dissent from this Court's order denying leave to appeal. The Court of Appeals in a split decision held that defendant was entitled to a new trial because the prosecutor violated his duty to disclose exculpatory and impeachment evidence to the defense under *Brady v Maryland*, 373 US 83 (1963), by failing to disclose two reports that had been prepared by Child Protective Services (CPS) in 2010 and 2013 concerning alleged sexual abuse by defendant. *People v Butsinas*, unpublished per curiam opinion of the Court of Appeals, issued January 23, 2018 (Docket Nos. 327796 and 327799). Judge O'BRIEN dissented with respect to the granting of a new trial, concluding that it was "not necessary because the reports are not material when viewed in totality." *Butsinas*, unpub op at 2 (O'BRIEN, J., *concurring in part and dissenting in part*).

　　　　"[T]he components of a 'true *Brady* violation,' are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150 (2014). "To establish materiality, a defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id*., quoting *United States v Bagley*, 473 US 667, 682 (1985). I do not address at this time whether knowledge of the CPS reports should be imputed to the prosecutor for the purposes of the first *Brady* component, see *Kyles v Whitley*, 514 US 419, 437 (1995) (explaining that "the individual prosecutor has a duty to learn of any favorable evidence known to the others

acting on the government's behalf in the case"),[1] nor do I address whether the CPS reports were "favorable to the accused," because for the reasons thoroughly explained by Judge O'BRIEN, the third component, the requirement of materiality, was not satisfied here.

Concerning the 2010 CPS report, which indicates that the victim failed to inform CPS during that investigation that she had been abused by defendant, I fail to discern how defendant would have been acquitted had defense counsel been in possession of this report largely because the information therein is cumulative to the information presented at trial given that *all* witnesses, including the victim herself, agreed that she never disclosed such abuse to anyone at the time. Furthermore, the victim's sister testified at trial that she had filed a complaint with CPS around 2010 regarding defendant and that nothing resulted from her complaint. Indeed, during closing arguments, defense counsel observed that if a complaint had been filed with CPS by the victim's sister, defendant was presumably vindicated. Given these circumstances, the jury likely inferred that CPS

---

[1] Caselaw from other jurisdictions suggests that it is far from settled that CPS is an agent of the prosecutor for the purposes of *Brady*. See, e.g., *Harm v State*, 183 SW3d 403, 407 (Tex Crim App, 2006) ("CPS is charged with protecting the welfare and safety of children in the community. This duty may entail the investigation of child-abuse claims, but that alone does not automatically transform CPS case workers into law-enforcement officers or state agents."); *People v Terry*, 19 App Div 3d 1039, 1039 (2005) ("[T]he [CPS] report itself, if indeed one exists, is not *Brady* material because the prosecutor never possessed it.").

Furthermore, with regard to the "suppression" aspect of the first *Brady* component, I note that defense counsel indicated during the *Ginther* hearing that he had been aware of the existence of the CPS reports and that those, in fact, may have been obtained by defendant prior to trial because he was "[a] person named in the report or record as a perpetrator or alleged perpetrator of the child abuse . . . ." MCL 722.627(2)(f); see also *People v Ginther*, 390 Mich 436 (1973). See also Michigan Department of Health and Human Services, *Services Requirements Manual*, SRM 131 (September 1, 2015), pp 14, 16 (providing that "children's protective services case information or records" may be released to "[a] person named in a children's protective services investigation report as a perpetrator or alleged perpetrator of child abuse or neglect"), available at <https://dhhs.michigan.gov/OLMWeb/ex/SR/Mobile/SRM/ SRM%20Mobile.pdf (accessed December 20, 2018)> [https://perma.cc/N4YT-PY8J]. While it is true that "a diligence requirement is not supported by *Brady* or its progeny," *Chenault*, 495 Mich at 146, it is also true that "evidence that the defense *knew* of favorable evidence will reduce the likelihood that the defendant can establish that the evidence was suppressed for purposes of a *Brady* claim," *id*. at 155 (emphasis added). The Court of Appeals engaged in no significant analysis concerning whether one or both of the CPS reports were genuinely "suppressed" by the prosecutor.

interviewed the victim around 2010 and she did not disclose that defendant was abusing her.

In concluding that possession of the 2010 CPS report would have aided the defense, the Court of Appeals reasoned that defense counsel "likely would have" presented a witness "to educate the jury regarding the techniques routinely employed to elicit truthful information in similar circumstances" and that such a witness "could have" been used by defense counsel to illustrate for the jury "the general accuracy and reliability of forensic interviews and interviewing techniques." *Butsinas*, unpub op at 11. However, as defendant himself acknowledges in his answer to the prosecutor's application for leave to appeal, "[t]he defense [in fact] presented Katherine Okra as an expert in forensic interview protocol," and Dr. Okra testified at length about that protocol. And as explained previously, the jury likely inferred that the victim had been interviewed by CPS in 2010, but that she did not disclose the abuse to CPS at that time. That is, the jury likely inferred that the victim did not disclose the abuse despite the forensic interview protocol. Consequently, the hypothetical offered by the Court of Appeals actually occurred at trial-- a witness apprised the jury concerning forensic interview protocol-- and it is thus unwarranted to grant a new trial in large part so that defendant can present the same evidence once more.

Concerning the 2013 CPS report, that report would likely have been even less helpful to the defense than the 2010 CPS report. First, the 2013 CPS report contradicted a police officer's testimony concerning the reason why the victim was not interviewed at Care House in 2013, but I fail to discern the significance of this contradiction in assessing whether defendant was guilty of the charged offenses. Second, the report indicated that the victim told the police that she had been sexually abused during the day, whereas she testified at trial that she was sexually abused at night. In my judgment, this is a relatively minor detail that would not have been given significant weight by the jury, given that the sexual assaults occurred both repeatedly and several years earlier. Third, the report indicated that the victim's sister disliked defendant, but this fact was also minimally relevant because the entire case was predicated on the *victim's* allegations. Put simply, as Judge O'BRIEN observed, the 2013 CPS report only includes "inconsequential pieces of impeachment evidence, which do not, in any conceivable way, undermine confidence in the jury verdict." *Butsinas*, unpub op at 3 (O'BRIEN, J., *concurring in part and dissenting in part*).

To summarize, the CPS reports here were not "material" under *Brady* and the Court of Appeals erred by concluding otherwise. Accordingly, I would reverse the Court of Appeals' ruling that defendant was entitled to a new trial on the basis of the

alleged *Brady* violation and remand to that court to address defendant's remaining arguments that have not yet been addressed.

ZAHRA and WILDER, JJ., join the statement of MARKMAN, C.J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 27, 2018



Clerk

t1226