

# NUMBER 13-22-00356-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

WILLIAM LEE REESE,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                                    Appellee.

## On appeal from the 36th District Court
## of Aransas County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

Appellant William Lee Reese was convicted of continuous sexual abuse of a young child, a first-degree felony, and was sentenced to forty years' imprisonment. *See* TEX. PENAL CODE ANN. § 21.02(b). On appeal, Reese challenges his conviction by four issues, arguing: (1) the trial court erred by excluding evidence of a child custody dispute between the minor complainant's biological parents; (2) the trial court erred by excluding evidence

of a "prior outcry" by the complainant regarding her biological father; (3) the trial court erred by refusing to hold a hearing on his motion for new trial and by denying the motion; and (4) he was afforded ineffective assistance of trial counsel. We affirm.

## I.  BACKGROUND

The indictment alleged that, from on or about April 8, 2015, to on or about September 27, 2019, Reese committed two or more acts of sexual abuse against H.V., a child younger than fourteen.[1] *See id.*

Trial testimony established that H.V. was born in 2007 to her mother J.R. and her biological father B.V. J.R. had dated Reese prior to her relationship with B.V., and she reunited with Reese after H.V.'s birth. J.R. testified that Reese helped raise H.V. and her three other children. According to J.R., when H.V. was six years old, she said she wanted J.R. to break up with Reese and to get back together with B.V.

In 2017, J.R. and Reese married, and they lived in a house with H.V., her three half-siblings, and three other relatives. Later that year, J.R., Reese, H.V., and H.V.'s half-siblings moved into a trailer house on the same property. H.V. testified that, when she was "around eight" years old, Reese took her into a garage which was between the two houses, locked the door, put her on a folding table, took out his penis, and told her to suck it. H.V. said that she complied because she was "taught never to say no to an adult," and that Reese made her promise not to tell anyone about what happened. Some time later, after H.V.'s half-brothers had been born but before her half-sister was born, Reese again had H.V. perform oral sex on him in the garage, and he also penetrated her sexual organ with his penis. H.V. testified she tried to scream but Reese put his hand over her mouth.

---

[1] To protect the child victim's identity, we refer to her and her relatives by initials.

H.V. said the incidents in the garage—both oral sex and intercourse—happened more times than she could count.

H.V. reported that, prior to Hurricane Harvey, she shared a bedroom with her aunt who was also a child, and sometimes another older disabled family member would sleep in the same room. After the hurricane, H.V. shared a bunk bed with her half-sister. She said that Reese also had her perform oral sex and engaged in vaginal and anal intercourse with her in that room. She said it happened many times in that room, and that Reese would often ejaculate onto the carpet or clothes next to the bed.

H.V. said that, on October 19, 2019, Reese had sex with her in her bedroom while the rest of the family was attending a barbeque. Several days later, H.V. reported the abuse to her school counselor, and she underwent a sexual assault examination on October 22, 2019. H.V. reported to the examiner that she had been sexually abused since she was five years old. The examination did not reveal trauma to the genitals, and no foreign DNA or semen was detected on swabs taken during the examination. H.V. went to live with B.V. and his wife G.E.V. later that month.

Police took swabs from the mattress, bed frame, and carpet in the trailer where H.V. said many acts of sexual abuse had occurred. Testing revealed traces of Reese's DNA on the swabs, as well as the DNA of a third unidentified person, but not H.V.'s DNA. The forensic technician testified that there was no way to determine when or how the DNA was deposited on those items.

J.R. testified that she did not believe H.V.'s allegations because her story "did not make sense." In particular, J.R. noted that H.V. said Reese had a tattoo on his chest, but in fact he does not. J.R. further noted that the garage table upon which H.V. claimed the

3

abuse occurred was "completely covered in tools, in grease, and everything," implying that there was no room on the table for sexual abuse to have occurred. J.R. further noted that she never heard any screaming, she did not notice any injuries to H.V., H.V. did not complain of any pain, and H.V. did not appear afraid of Reese. J.R. testified that, the night before H.V. made the outcry to the school counselor, H.V. had a "long chat" on the phone with B.V., though H.V. denied this. J.R. also explained that she and Reese previously had sexual relations in the bed from which the forensic samples were taken.

J.R.'s mother and H.V.'s grandmother, L.H., testified that H.V. "was a pathological liar," "a manipulator," and "a narcissist." She did not believe H.V.'s allegations of abuse, noting that the door to the garage did not lock, that the table in the garage was "greasy or dirty or full of tools," and that "somebody would have seen or heard something" had the abuse actually occurred.

During L.H.'s testimony, defense counsel sought to introduce evidence indicating that, in June of 2011, when H.V. was four years old, L.H. took her to Driscoll Children's Hospital in Corpus Christi for a sexual assault examination. According to hospital records, L.H. reported that H.V. had engaged in sexually suggestive behavior with two child relatives in the bathtub and made sexual remarks. L.H. reported to hospital staff that H.V. told her that B.V. showed her how to do these things. L.H. further reported that H.V. began these behaviors shortly after H.V. began regular unsupervised visitation with B.V. The State objected to this evidence and the trial court sustained the objection.

Reese presented expert testimony by JoAnn Murphey, a psychologist. Murphey testified that cases of false reports of child sexual abuse are "rising," particularly "where parents are fighting for custody." On cross-examination, Murphey conceded that there

4

were no divorce or child custody proceedings involved in this case.

Reese was convicted as charged and sentenced to forty years' imprisonment. He later filed a motion for new trial arguing four grounds: (1) the prosecutor referred to matters not in evidence at closing argument during the guilt-innocence phase; (2) the trial court erred by excluding evidence of "an outcry of sexual abuse [H.V.] suffered from her biological father several years before the incident leading to the indictment in this case"; (3) there was newly discovered evidence which is relevant to the case; and (4) his trial counsel provided ineffective assistance. The third issue concerned text messages allegedly sent by B.V. to J.R. in which B.V. "demand[ed J.R.] sign over custody [of H.V.] to him and threaten[ed] the likelihood of a support action being brought by the Attorney General of the State of Texas." The motion was accompanied by an affidavit in which J.R. attested to the authenticity of the text messages. J.R. also averred:

> Prior to [H.V.]'s outcry in October[] 2019, [B.V.] had complained about the support he had to pay, citing being responsible for seven other children, all born after [H.V.]. Immediately after [H.V.]'s outcry, he told me he wanted to stop paying me any support. He also demanded that I sign over custody to [H.V.]. . . . Before [Reese]'s trial, I told [Reese's trial counsel] about [B.V.] seeking custody of [H.V.], his need to support many other children, and his desire to terminate support payments to me.

The trial court denied the motion for new trial, and this appeal followed.

## II.    DISCUSSION

### A.    Exclusion of Evidence

By his first two issues, Reese argues the trial court erred by granting the State's objections to evidence. "We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020).

5

### 1.    Child Custody Dispute

By his first issue, Reese argues the trial court erred "by refusing admission of evidence of child custody disputes between" J.R. and B.V. He contends that this evidence was relevant to the jury's evaluation of H.V.'s credibility, which was the central issue at trial, and that its exclusion affected his substantial rights.

In his argument as to this issue, Reese does not point to any specific point in the record in which the trial court disallowed testimony regarding a child custody dispute between J.R. and B.V. *See* Tex. R. App. P. 38.1(i). However, in the statement of facts section of his brief, Reese notes that the trial court did not allow G.E.V., B.V.'s current wife and H.V.'s stepmother, to answer defense counsel's questions as to whether and why B.V. was previously prohibited from having unsupervised visitation with H.V. In an abundance of caution and in our sole discretion, we presume that Reese's first issue challenges this ruling.[2]

The record reflects that G.E.V. was called as a witness by defense counsel. She testified that H.V. had been diagnosed with post-traumatic stress disorder and depression and that H.V. once lied that she attempted suicide, but G.E.V. had "no doubt" that H.V.'s allegations regarding Reese were true. On cross-examination by the prosecutor, G.E.V. testified that J.R. did not seek to visit H.V. while H.V. was living with her and B.V. On re-direct examination, defense counsel argued that the State's questions "open[ed] the door" to testimony regarding "a broken relationship" between J.R. and B.V. Defense counsel

---

[2] In its responsive brief, the State appears to construe Reese's first issue as concerning the text messages between J.R. and B.V. that were attached to Reese's new trial motion. However, those text messages were not offered as evidence at trial. Moreover, Reese's first issue does not contain citations to authority concerning motions for new trial or newly discovered evidence; instead, he addresses the new trial motion in a separate issue. Accordingly, we do not construe this issue as the State does.

contended specifically that the State's questioning had generated a "false impression" that J.R. and her family "made no attempt to contact" H.V. when she was living with B.V. The State objected on grounds that the question was irrelevant and that the probative value of any answer would be outweighed by the potential to mislead or confuse the jury. *See* TEX. R. EVID. 401, 403. The trial court sustained the objections. By offer of proof outside the presence of the jury, *see* TEX. R. EVID. 103(a)(2), G.E.V. testified that she was aware that B.V. was not allowed to have unsupervised visitation with H.V. for a "period of years," but she denied knowing that this was because B.V. "had been found by CPS to be exposing the children including [H.V.] to pornography." When the jury returned, G.E.V. acknowledged that there was a "rift" between B.V. and J.R. "and their respective families" but she did not know what caused it because it started prior to her relationship with B.V.

Even assuming the trial court erred, we cannot conclude that Reese suffered harm from the ruling. Because an error in an evidentiary ruling is generally non-constitutional, we must disregard it unless it affected Reese's "substantial rights." TEX. R. APP. P. 44.2(b). Under this standard, an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). In deciding whether substantial rights were affected, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error. *Id.* If we have "fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Id.*

7

In arguing that his substantial rights were affected by the exclusion of G.E.V.'s testimony, Reese notes that H.V.'s credibility was the central issue of the case. He further observes that the prosecutor mentioned the lack of "custody battles" or divorce in this case in his closing argument, and he points to Murphey's testimony that fabrications of child abuse are common in cases involving custody disputes. However, aside from acknowledging that B.V. was at one point not allowed to have unsupervised visitation with H.V., G.E.V. did not testify in her offer of proof that B.V. and J.R. were ever engaged in a custody dispute regarding H.V., either at the time the abuse was occurring, at the time the outcry was made, or at the time of trial. Moreover, Murphey acknowledged on cross-examination by the State that there were no custody or divorce proceedings involved in this case. Under these circumstances, we cannot say that the exclusion of the subject testimony had a substantial and injurious effect or influence in determining the jury's verdict. Instead, we have fair assurance from an examination of the record as a whole that this ruling did not influence the jury. *See id.* Reese's first issue is overruled.

**2.	"Prior Outcry"**

By his second issue, Reese contends the trial court erred by excluding evidence indicating that J.R. had made a "prior outcry" of abuse against her biological father B.V. in 2011. Reese contends this evidence was relevant because it relates to H.V.'s "motive or bias" and was needed "to rebut the State's evidence that [Reese] showed H.V. pornography"[3] and "that [J.R.] essentially abandoned [H.V.] to [B.V.] after the [2019] outcry."

As noted, defense counsel sought to admit medical records indicating that, in June

---

[3] The parties do not direct us to any such evidence in the record.

8

of 2011, when H.V. was four years old, she underwent a sexual assault examination after her grandmother L.H. reported that H.V. engaged in inappropriate sexual behavior and language which H.V. said she learned from B.V.[4] The State objected on grounds that the evidence was irrelevant and its probative value is outweighed by its potential to mislead or confuse the jury. *See* TEX. R. EVID. 401, 403.

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. But in a sexual abuse case, evidence of "specific instances of a victim's past sexual behavior" is inadmissible unless, as pertinent here, it "relates to the victim's motive or bias" or "is constitutionally required to be admitted." TEX. R. EVID.

---

[4] Specifically, the medical records state:

The grandmother states that patient's biological father has not had overnight and weekend visitation for very long. She said that since he wasn't paying child support, he was just granted supervised visitations for just a few hours at a time. She said that this lasted for about 6 weeks and then for the next 6 weeks he was allowed visitation supervised by the paternal grandmother. . . .

The grandmother said that she became concerned of patient's behaviors the end of May. She said that when patient returned from her father [B.V.]'s home, she started "pooping and tting [sic] in her pants" and said that it was "funky looking," she became very angry telling people that she hated them, and began cussing saying things like, "I don't give a dam[n.]" The grandmother said that after her visitation with the father on May 22nd, she was bathing patient with her brother and an aunt and was "touchy" with them. She said that she had to tell patient to keep her hands to herself. The grandmother said that she has also caught patient sticking her fingers in her private and then licking them. She said that when she asked her what she was doing, patient told her, "I'm playing." She said that she asked patient where she learned it, she told her, "[B.V.] (referring to her father) taught me." The grandmother said that yesterday the maternal grandfather caught patient on top of her [two-year-old] brother[]. She said that when the grandfather asked her what she was doing, she told him, "I'm fucking him." She said that when they asked her where she learned it, she said, "[B.V.] (referring to her father) taught me." The grandmother said that she called patient's mother, who called the attorney general's office, who then filed a report to CPS. The grandmother said that the CPS worker told them to go to a local emergency department to be examined.

When patient was being examined in the emergency department on 6/27/11, the grandmother said that she was concerned that when patient returned from her last visit with the father (last visit was 6/18 & 6/19), she had a bruise on her cheek and had a sunburn. The grandmother showed this social worker a picture of patient with small bruise to area between her nose and mouth and a sunburn to her back.

412(a)(2), (b)(2)(C), (E). To be admissible under Rule 412, the probative value of the evidence must outweigh the danger of unfair prejudice. Tᴇx. R. Eᴠɪᴅ. 412(b)(3).

Citing no authority other than Rule 412, Reese contends the trial court should have admitted this evidence because, when it is viewed alongside evidence that B.V. spoke to H.V. the night before making the outcry in 2011, "there is a strong likelihood of a motive for H.V. to make an allegation of sexual misconduct to further a goal of being moved from custody of [Reese] and [J.R.] to custody of [B.V.] and [G.E.V.]." We disagree. First, the medical records do not indicate that sexual abuse actually occurred in 2011; instead, they state that H.V. "did not give a history of sexual abuse," she "didn't have any genital trauma," and the exam "did not reflect any indicators of sexual abuse."[5] Even if the medical records did indicate that H.V. had been the victim of sexual abuse by B.V. in 2011, Reese does not explain how that alleged fact would be relevant to H.V.'s "motive or bias" with respect to her testimony in the current proceeding. *See* Tᴇx. R. Eᴠɪᴅ. 412(b)(2)(C). We agree with the State that "[i]t cannot be logically deduced that the victim had a motive or bias to fabricate allegations of sexual abuse against [Reese] based on her prior alleged abuse at another's hand that she did not outcry to and/or does not remember." The trial court did not abuse its discretion in excluding this evidence as irrelevant. *See Harm v. State*, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006) (concluding

---

[5] In a section entitled "Assessment," the medical records state:

> The grandmother expressed concerns of sexual abuse due to behavioral changes in patient after returning from the father's home and some acting out behaviors. The acting out behavior is concerning for patient witnessing something inappropriate but not specific for her being sexually abused. Counseling is recommended to further evaluate these behaviors. CPS is already involved to investigate these behaviors. The grandmother also expressed concerns in the ED on 6/27/11 of patient having a bruise on her cheek after the last visitation with the father. Patient doesn't have any injuries at this time concerning for non-accidental trauma.

In her trial testimony, H.V. denied that B.V. allowed her or any other child to have access to pornography.

in dicta that files relating to a prior CPS investigation involving a sexual abuse allegation the victim made against another individual had limited impeachment value, included "inadmissible multiple hearsay," and were not favorable to the defense under *Brady*).

Reese's second issue is overruled.

## C.    Ineffective Assistance of Counsel

We next address Reese's fourth issue, by which he argues his trial counsel provided ineffective assistance.

The United States and Texas Constitutions guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see* TEX. CODE CRIM. PROC. ANN. art. 1.051; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To obtain a reversal of a conviction on grounds of ineffective assistance of counsel, an appellant must show: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland*, 466 U.S. at 687). "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687). "The prejudice prong of *Strickland* requires showing 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 248 (quoting *Strickland*, 466 U.S. at 694).

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App.

11

1999). Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689. "We commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813.

Reese argues his trial counsel was ineffective "for failing to investigate and introduce evidence concerning [a] pre-trial dispute between H.V.'s biological parents concerning her custody and support." He notes that, because defense counsel hired Murphey, counsel should have been aware of Murphey's opinion that false abuse allegations are "rising" in cases in which custody disputes are ongoing. He states that, though counsel attempted to offer evidence of H.V.'s 2011 sexual assault examination, his "fail[ure] to further investigate and offer evidence concerning a custody dispute ongoing at the time of trial" served no strategic purpose and fell below the applicable standard of care. Reese further contends that J.R.'s affidavit, which was attached to his new trial motion, is "sufficient to show that there is a reasonable probability of a different outcome had the evidence of custody disputes been introduced."

We disagree. Although Murphey testified that false reports of child sexual abuse are "rising" particularly where "parents are fighting for custody," it is undisputed that there were no formal divorce or formal child custody proceedings involved in this case. Moreover, in this case, the jury was made aware that H.V.'s biological parents were

estranged, that her mother was married to Reese at the time H.V. made her outcry, and that H.V. moved in with B.V. and G.E.V. shortly after the outcry. The jury was also made aware that there was a "rift" between H.V.'s parents which existed prior to the time G.E.V. and B.V. began their relationship, and therefore, prior to the time of the outcry. Additional evidence of a dispute *at the time of trial* would have been cumulative and would not have supported the theory Reese espouses on appeal—i.e., that H.V. fabricated her 2019 outcry because her biological parents were involved in a custody dispute at that time. *See Tutt v. State*, 940 S.W.2d 114, 121 (Tex. App.—Tyler 1996, no pet.) (concluding that appellant failed to show prejudice where the evidence he claimed trial counsel should have introduced was cumulative of other evidence presented at trial). Based upon the facts set forth in the new trial motion and affidavit, we cannot conclude that counsel's performance fell below an objective standard of reasonableness or that his performance prejudiced the defense. We overrule Reese's fourth issue.

## C.     Motion for New Trial

Finally, we address Reese's third issue, by which he contends the trial court erred by denying his motion for new trial and by refusing to hold a hearing on the motion. We review the denial of a motion for new trial for abuse of discretion, "reversing only if no reasonable view of the record could support the trial court's ruling." *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). We also review the trial court's decision on whether to grant a hearing on a motion for new trial for abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). A hearing "is not required when the matters raised in the motion for new trial are subject to being determined from the record." *Id.* On the other hand, the court must generally hold a hearing when a motion for new trial "raises

13

matters which are not determinable from the record." *Id.* at 338. When the grounds in the motion are based on matters not already in the record, the motion must "be supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim." *Id.* The affidavit "is sufficient if a fair reading of it gives rise to reasonable grounds in support of the claim," but affidavits that are conclusory in nature and unsupported by facts are not sufficient. *Id.*

As noted, Reese's motion for new trial argued four separate issues; however, on appeal, he provides argument as to only the third and fourth issues, concerning newly discovered evidence and ineffective assistance of counsel.[6] As to newly discovered evidence, J.R. stated in an affidavit attached to the new trial motion that, after the trial in this case, "[B.V.] made demands on me both via phone and social messaging to surrender custody and threatened me with the threat of going to the Attorney General if I did not sign." Copies of text messages between J.R. and B.V. were attached to the affidavit. Without elaboration, Reese claims on appeal that "[t]his evidence shows [a]ppellant could be entitled to relief, and it was incumbent on the trial court to either grant the motion or conduct a hearing on the motion."

We disagree. "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001. But to obtain relief under this statute, the defendant must show:

(1)     the newly discovered evidence was unknown or unavailable to the defendant at the time of trial;

(2)     the defendant's failure to discover or obtain the new evidence was

---

[6] Though Reese cites authority concerning motions for new trial and when a hearing thereon is required, he does not cite authority concerning if or when newly discovered evidence supplies grounds for a new trial. *See* TEX. R. APP. P. 38.1(i). We address that issue out of an abundance of caution and in our sole discretion.

14

not due to the defendant's lack of due diligence;

(3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and

(4) the new evidence is probably true and will probably bring about a different result in a new trial.

*State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017). As Reese concedes, the text messages were relevant only insofar as they established that there was a "custody dispute" between B.V. and J.R. at the time the messages were sent. But according to J.R.'s affidavit, B.V. told her "immediately after [H.V.]'s outcry" in 2019 that he wanted custody of H.V. and that he wanted to stop paying child support. Accordingly, the affidavit does not establish that the relevant substance of the newly discovered text messages was "unknown or unavailable" to Reese at the time of trial. *See id.* The trial court did not abuse its discretion by denying a hearing on the motion for new trial and denying the motion itself based on grounds of newly discovered evidence.

As to ineffective assistance of counsel, we have already concluded that the record does not support a finding that Reese's trial counsel's performance fell below an objective standard of reasonableness. We further conclude that the factual allegations in the motion for new trial and attached affidavit, fairly read, do not give rise to "reasonable grounds in support" of the ineffective assistance claim. *See Smith*, 286 S.W.3d at 339. Accordingly, the trial court did not abuse its discretion by declining to hold a hearing on the motion based on grounds of ineffective assistance of counsel. *See id.* We overrule Reese's third issue.

15

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
12th day of October, 2023.