

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00299-CR

———————————————————

## Ex parte Liam John Smith

On Appeal from County Criminal Court No. 7
Tarrant County, Texas
Trial Court No. 1445845

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

In 2016, Liam John Smith pleaded guilty to the Class B Misdemeanor of Driving While Intoxicated. He was sentenced to and served ninety days in jail. In June 2024, Smith filed an application for habeas corpus relief under Texas Code of Criminal Procedure Article 11.09, arguing that the State withheld exculpatory evidence in violation of *Brady* and requesting that the trial court allow him to withdraw his guilty plea. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963). The trial court denied the requested relief, and Smith appeals from that order. We will affirm.

## I. BACKGROUND

Upon Smith's arrest for driving while intoxicated, the State obtained a search warrant to have his blood drawn and tested to determine his blood-alcohol concentration (BAC). Christopher Youngkin—a former forensic scientist with the Texas Department of Public Safety (DPS)—analyzed Smith's blood sample and determined that it did not contain a detectable amount of alcohol.

The blood sample was then sent to another DPS lab for drug analysis. The drug-analysis results showed that Smith's blood contained detectable levels of cannabinoids and benzodiazepines. Based on the drug-analysis results, the investigating police officer requested and received a written opinion letter from the drug-laboratory director. The laboratory director opined that the combination of

2

drugs in Smith's blood indicated "a high likelihood of impairment" that would have had "an additive sedative effect equivalent to a [BAC] of about 0.03%."

After pleading guilty and serving his sentence, Smith received a letter dated June 19, 2017, from the Tarrant County District Attorney's Office notifying him that Youngkin had violated DPS policy on "several occasions" by giving "ambiguous and misleading" testimony regarding a "sample switch" that had occurred in an unrelated 2013 case. The letter stated that DPS had first notified the District Attorney's office of Youngkin's violations on May 25, 2017.

Smith filed the instant habeas application in June 2024 and argued that the State had withheld the BAC, drug-analysis, and Youngkin-misconduct evidence from him in violation of his due-process rights under *Brady*.[1]  *See id.*  He asked the trial court to reverse his conviction and to allow him to withdraw his guilty plea.  To his application, Smith attached a number of documents, including police reports from his arrest, his affidavit, copies of the BAC-testing results and the drug analysis and opinion, and the letter from the District Attorney's office notifying him of Youngkin's DPS policy violations.

Smith attested that, prior to pleading guilty, he and his trial counsel had not been informed of (1) the Youngkin test results showing a zero BAC, (2) the drug-analysis results and attendant opinion equating the levels of drugs in his blood to a

---

[1]Smith did not argue that the State violated the Michael Morton Act production requirements.  *See* Tex. Code Crim. Proc. Ann. art. 39.14(a).

3

0.03% BAC, and (3) Youngkin's violations of DPS policy. He also attested that, had he been aware of any of this evidence, he would not have pleaded guilty and would have instead opted for a jury trial.

The State filed a response in opposition to Smith's application. It contended that it had provided Smith and his attorney with the Youngkin BAC results and the drug-analysis results and opinion approximately seven weeks prior to Smith's guilty plea. The State also contended that it had not violated its disclosure requirements related to Youngkin's violations because it had promptly notified Smith of those violations within a month of their coming to the State's attention.

In support, the State attached portions of the trial-court clerk's record for Smith's DWI case, a screenshot from the TechShare database showing what evidence the State had shared with Smith and his trial counsel,[2] and copies of police reports and supplemental police reports from the case.

The trial-court clerk's record contained the State's discovery compliance statement that was submitted to the trial court at the time of Smith's guilty plea on March 4, 2016. It shows that, on January 13, 2016, the State had disclosed to Smith police reports from his case bearing the case number 15CP052219. The TechShare-

---

[2]TechShare is the system used by the State to share documents with defense attorneys. *See Mitchell v. State*, No. 02-19-00267-CR, 2021 WL 4205008, at *2 n.3 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op., not designated for publication).

database screenshot confirms that the 15CP052219 police reports and supplemental police reports were shared with Smith on January 13 and February 10, 2016.

The 15CP052219 police reports contained written narratives of the events leading to Smith's DWI arrest and various supplemental narratives containing updated information related to the follow-up investigation. In one included supplemental report from October 7, 2015, the investigating officer noted that he had received Smith's BAC test results from DPS, that they detected no alcohol, and that the blood sample was being forwarded for drug analysis. In a subsequent included supplemental report from January 12, 2016, the officer reported that he had received the drug-analysis report showing detectable levels of cannabinoids and benzodiazepines in Smith's blood. He also noted that he had requested and received the drug-analysis opinion stating that the levels of drugs in Smith's blood indicated a high likelihood of impairment. And, additionally, copies of the BAC and drug-analysis reports and opinion letter (which indicated that the drugs in Smith's system were equal to a BAC of 0.03%) were included within the 15CP052219 police reports that had been submitted through TechShare.

The State then filed proposed findings of fact and conclusions of law that included the following:

Findings of Fact

- "The [State's] discovery compliance statement shows that, on January 13, 2016, the State made discoverable a police report . . . named '15CP052219.'"

5

- "[This police report] includes the allegedly undisclosed . . . crime laboratory reports analyzing [Smith's] blood sample, and an opinion letter from [a forensic scientist] interpreting its results."

- "Techshare confirms that the State disclosed [the police report] to defense counsel on January 13, 2016."

- "The State disclosed the forensic reports relating to [Smith's] blood sample and the opinion letter to the defense approximately seven weeks before the applicant entered his guilty plea."

- The State received impeachment information regarding Mr. Youngkin on May 25, 2017, and made its disclosure within one month, which included determining the cases in which Mr. Youngkin had some involvement."

Conclusions of Law

- "The State met its *Brady v. Maryland* . . . responsibilities by promptly and timely disclosing the forensic reports and opinion letter to the defense well before [Smith] entered his guilty plea."

- "The State met its *Brady v. Maryland* . . . responsibilities by promptly sending its disclosure regarding Mr. Youngkin once this information came into its possession and its applicability was confirmed."

Without holding an oral hearing, the trial court adopted the entirety of the State's proposed findings of fact and conclusions of law and denied Smith's application. Smith appeals from this order.

## II. STANDARD OF REVIEW AND RELEVANT LAW

A trial court's decision to grant or deny post-conviction habeas relief is reviewed for an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In a proceeding under article 11.09 of the Texas Code of Criminal Procedure, the trial judge is the sole factfinder; accordingly, we must afford almost

6

total deference to a trial court's factual findings if they are supported by the record. *Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016) (citing *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013)); *Ex Parte Martinez*, 451 S.W.3d 852, 856 (Tex. App.—Houston 2014, pet. ref'd). Moreover, "a reviewing court will defer to the factual findings of the trial judge even when the evidence is submitted by affidavit." *Ex parte Thompson*, 153 S.W.3d 416, 425 (Tex. Crim. App. 2005) (citing *Manzi v. State*, 88 S.W.3d 240, 242–44 (Tex. Crim. App. 2002)). Finally, we review the record evidence in the light most favorable to the trial court's ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 326 (Tex. Crim. App. 2006).

An applicant for post-conviction habeas relief bears the burden of proving his claim by a preponderance of the evidence. *Diamond v. State*, 613 S.W.3d 536, 545 (Tex. Crim. App. 2020). A *Brady* due-process violation occurs when the State suppresses evidence favorable to a defendant if the evidence is material either to guilt or punishment. *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). To show entitlement to post-conviction relief for a *Brady* violation, the applicant must show that (1) the State failed to disclose evidence, regardless of good or bad faith; (2) the withheld evidence is favorable to the applicant; and (3) the evidence is material. *Id.* While the State is prohibited from suppressing evidence, "*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist." *Id.* at 407 (internal quotations omitted).

## III. DISCUSSION

The record supports the trial court's findings and conclusions that the State timely disclosed the BAC and drug-analysis reports and the opinion letter to Smith. The discovery compliance statement showed (and the TechShare screenshot confirmed) that the State had made the relevant police reports available to Smith prior to his pleading guilty. And these police reports both discussed the lab results and opinion letter and included copies of those documents. Viewing this evidence in the light most favorable to the trial court's order and giving the appropriate deference to its findings of fact, we hold that the trial court did not err in finding and concluding that the State met its *Brady* responsibilities as to its disclosure of these documents. *See Ex parte Torres*, 483 S.W.3d at 42.

The record also supports the trial court's finding and conclusion that the State timely disclosed Youngkin's DPS violations. The evidence shows that the State learned of the violations on May 25, 2017, and sent a letter notifying Smith of Youngkin's misconduct and involvement in Smith's case less than a month later. Viewing this evidence in the light most favorable to the trial court's order and giving the appropriate deference to its findings of fact, we hold that the trial court did not err in finding and concluding that the State met its *Brady* responsibilities related to its disclosure of the Youngkin violations. *See id.*

## IV. CONCLUSION

Having held that the trial court did not err in denying Smith's requested habeas relief, we affirm the trial court's order.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 24, 2024